580 So.2d 852 (1991)
Donald MITCHELL, Appellant,
v.
STATE of Florida, Appellee.
No. 89-01797.
District Court of Appeal of Florida, Second District.
May 24, 1991.
Steven T. Cooley, Bradenton, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Marc E. Brandes, Asst. Atty. Gen., Miami, for appellee.
CAMPBELL, Judge.
Appellant, Donald Mitchell, raises several issues in this appeal from his conviction and sentence for robbery. We find error only in regard to the trial judge's failure to grant appellant's motion for continuance to enable appellant to attempt to serve an outstanding subpoena on what could have been a crucial and exonerating defense witness. On that ground, we reverse and remand for a new trial.
Defense counsel, in his opening statement to the jury, told them as follows:
You're also going to hear from the teller something very interesting, that being that the person that came into the NCNB bank and robbed the bank back in September, had a conversation with one of the people who was already conducting business at one of the windows, and that this robber actually spoke with the person for a minute or two in the presence of the teller and discussed things such as, haven't seen you in church for awhile, how you doing, long time no see, those kinds of things, and this person's name is Reverend Duncan. And then you're going to find out that Reverend Duncan, when being questioned by Detective Herranz, advised him he does not know Donald Mitchell, has never met Donald Mitchell, and doesn't know Donald Mitchell's family. Which is very interesting considering he carried on a conversation in the bank with a person who ultimately robs the bank, and even more interesting considering Donald Mitchell doesn't know Reverend Duncan.
The evidence presented at appellant's trial showed that on September 19, 1988, around 11:20 a.m., a man walked into the NCNB bank in Palmetto and approached the receptionist regarding opening an account. He told the receptionist he would go to the car and get identification and, when he returned, he went directly to the line for teller windows. As he approached the window staffed by Sheila Roush, he greeted a "Reverend Duncan," who had just completed a transaction at that window. Roush, who knew Reverend Duncan as a regular customer, heard him say to the alleged robber, "How have you been? I haven't seen you in a while." The two men exchanged pleasantries and shook hands. The man then stepped up to the window and pushed a note toward the teller and *853 told her it was a robbery and that he had a gun. He told her to give him money. Roush gave him the money and the robber left. The entire incident took place in five to seven minutes. The man who robbed the bank wore a white T-shirt with red lettering, khaki-colored shorts, and a leg brace. He did not walk with a limp or use crutches. He did not wear glasses or have a beard.
Later that day, Roush and the receptionist helped the police make composites of the robber. Several days after the robbery, a detective showed each of the women a photo pack from which they identified appellant.
At trial, the defense attempted to show that the bank personnel had mistakenly identified appellant who always wore glasses and a beard, was unable to walk without a limp and used crutches. Although the defense produced no witnesses, it moved for a continuance in order to attempt to serve its outstanding previously unserved subpoena on Reverend Duncan. The court denied the motion despite the protestations of appellant during the following colloquy:
MR. WEIFFENBACH [Defense Counsel]: Judge, as I indicated to the Court, we had an investigator attempting to locate Reverend Duncan. We were not able to get service on him. I've been advised by the State that he is back, which I was still not able to find him. The State apparently had him under subpoena.
It's my feeling that there's no need in continuing to look for him. I don't think it's going to help the defense at all.
My client, however, differs in his opinion as to the importance of having Reverend Duncan testify. He's requested that I ask the Court for more time to attempt to locate the Reverend to get him under subpoena and produce him for testifying on his behalf.
So I'm doing that at this point, I guess, asking the Court to allow me this morning to try and see if the investigator can't locate him. The State's indicated he's back from Ohio. I don't know what else to say.
THE COURT: Well, we don't have any evidence of what possibility there is that he can be served, if we can delay it for a half a day or a day or a week.
MR. WEIFFENBACH [Defense Counsel]: I understand that, Judge. All I can tell the Court is that we tried, I had an investigator looking last week trying to find him. He was out of state. And speaking with Mr. Lee, Mr. Lee has indicated he is back now. And apparently he had a conversation with Mr. Lee yesterday, so we know he's around. It's a matter of just finding him and serving him.
THE COURT: That could take a week.
MR. WEIFFENBACH [Defense Counsel]: Well, I understand, Judge. My client's feeling is that the State's had whatever number of months to get their witnesses coordinated, and he thinks he should be able to have some time to get his one witness subpoenaed and brought before the Court to testify.
THE COURT: Well, the Defendant had the equal amount of time as the State.
MR. WEIFFENBACH [Defense Counsel]: I understand that, Judge. I don't know what else I can offer, except for the fact that we did try to subpoena the man. We did not receive a copy of his deposition until late last week. And because I'm new counsel, I had no clue what the Reverend Duncan was even going to testify to until I was able to receive a copy of the transcript.
I didn't do any of the depositions in this case. They were all done by Mr. Williams.
And I guess the fact that we don't have him under subpoena is my fault, since there was no reason for me to believe that there was going to be any favorable testimony provided by the Reverend Duncan until I received the depositions. Upon receipt of those, we immediately put together a subpoena and contacted an investigator to try and locate the reverend.
MR. LEE [Assistant State Attorney]: All I'll say is, and no reflection on Mr. *854 Wieffenbach [sic], he does an excellent job, but Reverend Duncan's testimony, the substance of his testimony was available in the police report of Detective Herranz. You know, it's details as to what happened when he showed him the photopack and so forth. So that's been known, you know, through the police reports, not just through his deposition.
And I don't know where he went. Like I said, I talked to him yesterday, and I see very little chance of them trying to get ahold of him. And I did not, for the record, tell him to take off or leave or anything. I told him, I said, if you're under defense subpoena, I said, I'm not telling you that you should leave and disregard their subpoena. He said, I just received your subpoena through my grandmother. I just got back in town. She's all upset. And he indicated to me, you know, through his discussion, that he was not interested in cooperating, and I didn't want him anyway, so I said, well, you can go home. And that was the last I saw of him. And I doubt very much that they're going to be able to get ahold of him, because I don't think he wants to be involved on either side.
MR. WEIFFENBACH [Defense Counsel]: My client just has one or two things he'd like to address the Court.
THE DEFENDANT: Yes. In my motion I filed for demand for discovery, Reverend Duncan was listed as a State witness, so in my opinion he should be here. I got his deposition last week, and in my opinion his deposition is favorable to this defense. And he should be here, because he was a State witness. So the State failed to not bring that man forward. Then he's wrong. But he's a State witness, he should have been here, pointblank.
THE COURT: I don't know of any requirement that the State has to keep their witnesses here if they don't want them.
THE DEFENDANT: Well, sir, like I said, the demand for discovery I filed, he was on my demand for discovery. He should have been here. There's no ifs or buts about it.
THE COURT: That's not what the purpose of discovery is. I'll deny the motion, and we'll proceed to trial.
Shortly after the jury retired to consider their verdict, they sent back to the courtroom three written questions, the first of which was, "Why was the minister not called by either the prosicutor [sic] or the defense?"
The Reverend Duncan, who had told the investigating officers he did not know appellant, was so critical a witness to appellant's identity as the accused robber that to deny appellant an opportunity to present that testimony to the jury was, under the circumstances of this case, a palpable abuse of discretion. We well recognize that the granting or denying of a motion for continuance rests within the sound discretion of the trial judge. Jent v. State, 408 So.2d 1024 (Fla.), cert. denied, 457 U.S. 1111, 102 S.Ct. 2916, 73 L.Ed.2d 1322 (1982). We believe that rule should be generously observed where the motion for continuance is made during the trial. The circumstances of this case, however, cry out that a brief continuance should have been granted to appellant to attempt to locate the Reverend Duncan. The fact that the state had talked with Reverend Duncan the evening before and then released him from their subpoena while knowing that an outstanding defense subpoena was unserved exacerbates our concern to the extent that we determine that the stringent criteria set out for the granting of such a continuance in Dickerson v. Alabama, 667 F.2d 1364 (11th Cir.), cert. denied, 459 U.S. 878, 103 S.Ct. 173, 74 L.Ed.2d 142 (1982), in this case has been met.
We, therefore, reverse and remand this case for a new trial.
RYDER, A.C.J., and PATTERSON, J., concur.