[No. 18459-1-II. Division Two. June 7, 1996.]

THE STATE OF WASHINGTON, *Respondent*, v. DENNIS ROBERT SIMONSON, *Appellant*.

*R.A. Lewis* and *Knapp, O'Dell & Lewis*, for appellant (appointed counsel for appeal).

*Arthur D. Curtis, Prosecuting Attorney*, and *Robert W. Shannon, Deputy*, for respondent.

MORGAN, J. — Dennis Robert Simonson appeals his two child molestation convictions. The primary issue is whether the trial court erred by denying a continuance. We find error, but hold it was harmless.

On January 5, 1994, the State charged Simonson with committing various sex crimes against R.M. between January 1991 and November 1992. Because R.M. turned 14 in October 1991, the State charged second degree rape of a child committed between January 1991 and early October 1991 (Count I); second degree child molestation committed during the same period (Count II); third degree rape of a child committed between early October 1991 and November 1992 (Count III); and third degree child molestation committed during the same period (Count IV).

The State included a Vancouver police officer named Jane Scott on its pretrial witness list. It also furnished Scott's police report to the defense.

Trial commenced on Wednesday, May 18, 1994. At about 9:30 that morning, defense counsel told the judge and the prosecutor, in open court, that he wanted to call Scott if the State did not. Acknowledging he had not subpoenaed Scott, defense counsel asked the State to make her available. He said a defense investigator would be present later, and could subpoena her "if she's not going to testify in the State's case."[1] The prosecutor responded that Scott would be present about 2:30 that afternoon.

About 2:30, Scott arrived outside the courtroom. She waited in the hallway, because the prosecutor "had told her previously that witnesses would probably be excluded."[2] As the prosecutor later explained to the trial court,

I went out, saw her in the hallway, told her that I was not go-

---

[1]Report of Proceedings I at 6.

[2]Report of Proceedings III at 3.

ing to call her and she left, I guess, and I went back in the courtroom. I did not tell her to leave.[3]

The prosecutor did not tell the court or opposing counsel that Scott had appeared to testify. Nor, as far as the record shows, did he tell Scott that the defense wanted to call her. When Scott left the courthouse, she went on vacation, although the record does not show whether she went out of town.

About 3:10 p.m., R.M. took the stand. She testified that she and Simonson had had penile/vaginal intercourse on one occasion, "at the house,"[4] when she was 14. She also testified that he had penetrated her vagina with his fingers on two other occasions, and fondled her breasts, buttocks, or vaginal area about three times a week.

On cross examination, defense counsel asked R.M. whether she remembered speaking with Scott before trial. R.M. answered yes. Counsel then asked:

Q: Now when you first reported this to Jane Scott, did you tell her the same thing that you're saying today?

A: Yes.

Q: Isn't it true that you told Jane Scott that you're having intercourse with Mr. Simonson two or three times a day?

A: No.

Q: You didn't tell her that?

A: No.[5]

A minute or two later, counsel asked:

Q: And when you first reported this, you reported that he had it on two or three times a day, sexual intercourse?

---

[3]Report of Proceedings III at 4.

[4]Report of Proceedings I at 152.

[5]Report of Proceedings I at 164–65.

A: No, I do not recall saying that.[6]

R.M.'s testimony ended about 4:30 p.m. When the court inquired whether the State was resting its case, the prosecutor asked to "reserve" overnight. The next morning, the State rested.

In the defense case in chief, Simonson called his girlfriend and his mother. Each quoted R.M. as saying that her molestation allegations were untrue. In his own testimony, Simonson denied sexual contact and claimed R.M. was mad at him because he and her mother had made her obey certain rules.

Also in the defense case in chief, the following colloquy occurred, out of the presence of the jury:

> DEFENSE COUNSEL: Your Honor, Jane Scott is a key witness in our case. She appears to have not got her subpoena. What we would be asking is for some continuance or recess until such time as we can have her here. I think that she was on the State's witness list, and yesterday the State indicated that she would be here at 2:30 and she wasn't here at 2:30; we could have subpoenaed her at that time. I don't think it's our fault that we didn't subpoena her, or not totally our fault; and she's vital to our case and I don't think the defendant can have a fair trial without having her testimony in this case.[7]

The prosecutor responded:

> Your Honor, Ms. Scott was originally on the State's witness list. She was subpoenaed [apparently by the State] for 2:30 yesterday. She was here at 2:30 yesterday. I told [defense counsel], maybe last week, certainly on Monday, that this was basically going to be a one witness case. I mentioned that also in my opening, that the State was going to call one wit-

---

[6]Report of Proceedings I at 170.

[7]Report of Proceedings II at 39–40.

ness. I told him I wasn't planning on calling Jane Scott; he said that he probably would and I said okay.[8]

Defense counsel then said:

> Well, it was certainly my understanding that she was going to appear here and that I would actually see her. I don't know [when] she came, but I never did see her. I certainly would have subpoenaed her at that point; and that's what I thought was going to happen based on those representations . . . . Babbitts [a defense investigator] was here a lot earlier—there would have been no reason why we couldn't have subpoenaed her.[9]

Defense counsel then made an offer of proof to the effect that Scott, if called, would testify

> that [R.M.] had told [Scott] that the defendant was having sexual intercourse with [R.M.] two to three times a day for the entire time that [R.M.] was at the duplex and that that is substantially different from [R.M.'s] testimony at trial. [Scott] would also testify that it was clear that they were talking about penile/vaginal intercourse and not any sort of digital penetration, her having talked about both to [R.M.].[10]

The trial court denied the motion to continue. Later the same day, the jury acquitted on Count I, deadlocked on Count III, and convicted on Counts II and IV. After sentencing, Simonson filed this appeal.

## I.

The first issue is whether the trial court erred by denying a continuance. Simonson argues it did. The State argues (a) it did not and (b) if it did, the error was harmless.

## A.

■ In general, the grant or denial of a continuance rests

---

[8]Report of Proceedings II at 40.

[9]Report of Proceedings II at 40.

[10]Report of Proceedings II at 41–42. During oral argument, the State acknowledged that this offer of proof was essentially correct.

in the sound discretion of the trial court, and an appellate court will reverse only for abuse of discretion.[11] Appellate courts have found abuse, however, on facts similar to those here.

In *Mitchell v. State*,[12] the defendant was charged with robbery. An eyewitness to the robbery claimed to have recognized and spoken with the robber. The defense wanted to call this person to testify that he did not know the defendant, thus raising an inference that other eyewitnesses were mistaken in their identification of the defendant as the robber. Both the State and the defense issued subpoenas for the witness, but only the State's subpoena was served. The night before trial, the State talked to the witness "and then released him from their subpoena while knowing that an outstanding defense subpoena was unserved[.]"[13] At trial, defense counsel moved for a brief continuance to locate and serve the witness, but the trial court denied the motion. The defendant was convicted and appealed. Noting the trial court's discretion when considering a motion for continuance, the appellate court nonetheless found that the trial court abused its discretion in this instance. Reversing, it said that under the particular circumstances, "a brief continuance should have been granted to appellant to attempt to locate [the witness]."[14]

In *United States v. Barker*,[15] a defendant was again charged with bank robbery. Before trial, unnamed FBI technicians conducted tests that seemed to contradict the government's theory of the case. The defense issued subpoenas, which the Marshal failed to serve before trial. Then,

> On Monday morning, the first day of trial, the Marshal approached the Assistant United States Attorney in charge of

---

[11]*State v. Hurd*, 127 Wn.2d 592, 594, 902 P.2d 651 (1995).

[12]580 So.2d 852 (Fla. App. 1991).

[13]580 So.2d at 854.

[14]580 So.2d at 854.

[15]553 F.2d 1013 (6th Cir. 1977).

the case, M. Stephen Pitt, and asked, "What should I do with these? I don't know who to serve." Pitt replied that the Marshal should serve the subpoenas on Hillard Thorpe, the FBI agent in charge of the case, who was apparently present during the conversation. "If you've got to serve them, serve them on him." Agent Thorpe, in turn, made no efforts to secure the attendance of the witnesses. Instead, he "referred the matter to Mr. Pitt, (who) said he would take care of it."

Defense counsel asked Agent Thorpe what he planned to do about the subpoenas which had been served upon him. Agent Thorpe responded that he would talk to Pitt about the matter. When counsel spoke to Pitt, also that morning, he assured them that the laboratory technicians would be present so that the defense could call them as witnesses. When counsel learned on Wednesday that the technicians would not in fact appear to testify, they sought a mistrial or a continuance until the technicians could appear. The motion was denied.[16] The appellate court reversed, holding that the trial court abused its discretion by not granting a continuance.

 These cases apply here. Defense counsel told the prosecutor, in open court, that even though he had not subpoenaed Scott, he wanted to call her. Later the same day, the witness appeared at court and, in the manner of a reasonable and experienced witness, waited outside the courtroom. The prosecutor saw her, and knew or should have known that defense counsel had not. At that point, in our view, the prosecutor had an obligation to do more than tell the witness he would not call her (and, implicitly, invite her to leave). Specifically, he had an obligation to advise the court and counsel of her presence because he knew, from earlier discussion in open court, that the defense wanted to call her. By failing to discharge his obligation, he created circumstances in which it was an abuse of discretion not to grant a continuance within which Simonson could relocate Scott and resecure her at-

---

[16]553 F.2d at 1019.

tendance. The order denying a continuance was erroneous when made.[17]

## B.

Although the trial court erred by denying a continuance, Simonson cannot presently show that the error was prejudicial to a fair trial on the rape counts (Counts I and III).[18] The error was not prejudicial on Count I, for the jury acquitted on that count. The error was not prejudicial on Count III, for the jury deadlocked, and its deadlock had the same effect as if a continuance had been granted. At any future trial on Count III, Simonson will have the opportunity to secure Scott's attendance.

Nor was the order prejudicial on the molestation counts (Counts II and IV). Specific instances of a trial witness' pre-trial conduct are sometimes admissible for the purpose of casting doubt on the witness' credibility. *See* ER 608(b); ER 613(b). The allowable methods of proof vary according to the nature and importance of the conduct. If the conduct is a statement inconsistent with the witness' trial testimony, it may be proved by examination of the witness or extrinsic evidence. ER 613(b). If the conduct is not a statement inconsistent with the witness' trial testimony, but is nonetheless conduct probative of the witness' credibility, it may be proved by examination of the witness, but not by extrinsic evidence.[19] ER 608(b).

Here, the offer of proof involved extrinsic evidence. The

---

[17]Citing *State v. Harris*, 12 Wn. App. 481, 496-97, 530 P.2d 646, *review denied*, 85 Wn.2d 1010 (1975), the State argues that a continuance is not required to obtain evidence that is merely impeaching. We have no quarrel with that proposition as a general rule, for impeaching testimony is usually not central to a trial. We think, however, that there are rare circumstances in which impeaching testimony will be so important as to require a continuance, and that such circumstances were present here with respect to the rape counts.

[18]Simonson clearly could show prejudice, however, if the jury had convicted on either rape count.

[19]We have no occasion to consider or discuss conduct showing bias, or conduct showing a defect in physical or mental ability to observe, recall or relate. *See* McCormick on Evidence § 33, at 72-73 (3d ed. 1984).

primary witness, R.M., had already been examined. Scott was a different witness, and thus her testimony would have been "extrinsic" to that of R.M.

■ Although the offer of proof involved extrinsic evidence, it was admissible on the rape counts. At trial, R.M.'s testimony on the rape counts was that she and Simonson had had penile/vaginal intercourse once. According to the offer of proof, however, R.M. had told Scott that she and Simonson had had penile/vaginal intercourse "two to three times a day for the entire time that [R.M.] was at the duplex."[20] The latter statement being inconsistent with R.M.'s testimony on the rape counts, it was provable, in a trial on the rape counts, by extrinsic evidence. ER 613(b).

Because the offer of proof involved extrinsic evidence, it was inadmissible on the molestation counts. The offer did not show or contain any statement regarding sexual contact not amounting to penile/vaginal intercourse. As a result, it did not show or contain any statement inconsistent with R.M.'s trial testimony on the molestation counts; rather, it showed only a specific instance of conduct probative of untruthfulness. Such an instance not being provable by extrinsic evidence, ER 608(b), the offer of proof was admissible on the rape counts, but not on the molestation counts, and the order denying a continuance was not prejudicial on the molestation counts.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

Affirmed.

---

[20]Report of Proceedings II at 41.

SEINFELD, C.J., and BRIDGEWATER, J., concur.

Review denied at 130 Wn.2d 1012 (1996).