FILED
COURT OF APPEALS
DIVISION II

2014 MAR 11 AM 8:38

STATE OF WASHINGTON

BY_____
          DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42989-6-II |
| Respondent, | |
| v. | |
| DANIEL CRAIG WILSON, | UNPUBLISHED OPINION |
| Appellant. | |
| In re Personal Restraint Petition of | (Consolidated with No. 43352-4-II) |
| DANIEL CRAIG WILSON, | |
| Petitioner. | |

JOHANSON, J. — Daniel C. Wilson challenges his jury conviction for possession of a stolen vehicle. On direct appeal, Wilson argues that the trial court abused its discretion in denying (1) his motion for a continuance due to newly disclosed defense witnesses, and (2) his motion for a new trial based on "new evidence" that he remembered after trial. In his statement of additional grounds (SAG), Wilson argues that the trial court violated his right to a fair trial by making him appear before the jury in prison garb and that he received ineffective assistance of counsel. In his personal restraint petition (PRP), Wilson again claims ineffective assistance of counsel and he asserts that a witness for the State committed perjury at trial.

Because the trial court did not abuse its discretion in denying Wilson's motion for a continuance or his motion for a new trial, and Wilson cannot show that the trial court required him to appear before the jury in prison garb, that his counsel was ineffective, or that the State's witness committed perjury, we affirm the conviction and dismiss the PRP.

FACTS

The State charged Wilson with knowing possession of a stolen vehicle, occurring on or about August 23, 2011, contrary to RCW 9A.56.068. The day before trial, Wilson's attorney moved for a trial continuance because Wilson had told her the day before and that morning of two potential defense witnesses. The newly disclosed witnesses were expected to testify that Wilson possessed the vehicle with permission *before* August 20, the date that Ryan Steele, the used car lot's sales manager, alleged that it was taken and that this would impeach Steele's testimony. Wilson's attorney was unable to explain how the testimony from the new witnesses might be different from the testimony of the previously disclosed witnesses or how it might be material to the defense case. The State objected to the continuance because its witnesses were traveling from out of town that morning for trial. The State also argued that Wilson could have disclosed the witnesses to his attorney earlier. The court concluded that the newly disclosed witness testimony would not likely add to Wilson's already scheduled witnesses' testimony in a material way, and denied the motion because Wilson had months to prepare his alibi defense and that he should have disclosed the witnesses to his attorney earlier.

That same day, Wilson complained that he was dissatisfied with his counsel's representation. The court held an in camera proceeding to hear Wilson's concerns. During the proceeding, Wilson alleged that his attorney had failed to provide him with street clothes to wear and so "[t]his officer had to give me some clothes to wear." Report of Proceedings (RP) (Nov. 2,

2

2011, in camera hearing) at 3. Wilson's attorney responded that clothes were brought "to Mr. Wilson and they were brought yesterday to the jail." RP (Nov. 2, 2011, in camera hearing) at 6. There is no record of what Wilson wore during trial. Wilson also alleged he had only seen his attorney twice since she was assigned to his case and she failed to contact two witnesses that he wanted to testify. The first potential witness was a female friend, but Wilson did not tell the court what the female friend could testify to. He also said that his attorney's investigator had the phone number and address of his younger sister who could "give [Wilson] an alibi [about the car] that was supposedly stolen." RP (Nov. 2, 2011, in camera hearing) at 3. However, his attorney could not remember Wilson ever telling her about the friend or his younger sister being potential witnesses. The trial court determined that Wilson's attorney was not ineffective.

At trial, Steele, the State's witness, testified that on August 20, 2011, Wilson came into Affordable Motors in Spokane and spoke with Steele, the lot's sales manager, about a 1998 Cadillac Eldorado coupe. After obtaining a copy of Wilson's identification, Steele allowed Wilson to test drive it. The Cadillac had dealer license plates on it. Wilson returned with the Cadillac and discussed a final price with Steele. Steele allowed Wilson to drive the Cadillac to the bank to get money for a down payment. Steele told Wilson that he must return before 5:45 PM because the lot closed at 6:00 PM. However, Wilson did not return. Steele closed the lot without noticing that the Cadillac was missing. About an hour later, he attempted to call Wilson, but Wilson did not answer his phone.

On August 23, the vehicle was located in Bremerton using its global positioning tracker. The Bremerton Police Department found the vehicle in a parking lot and arrested Wilson, the driver. Although Wilson had no sales paperwork, Wilson told the police that he had purchased

the car in Spokane and that he was supposed to go back later to finish paying for it, but he had not done so yet.

After the State rested its case, Betty Jimerson testified that Wilson had picked her up at home in Seattle around 9:00 AM on August 20 and drove her to family birthday parties in Tacoma that day. No other witnesses testified on Wilson's behalf. The jury found Wilson guilty.

Later, Wilson moved for a new trial pursuant to CrR 7.5(a)(3) and (8). Wilson argued that newly discovered evidence—that he was driving the same vehicle during an August 18 traffic stop—entitled him to a new trial. Wilson's attorney explained that Wilson told her of the traffic stop after the trial and that she had contacted the Spokane Police Department who verified that there was an incident report involving Wilson on August 18. The incident report did not identify the type of vehicle that Wilson was driving, but the police officer who conducted the stop told Wilson's attorney that the vehicle had a temporary plate with the same plate number as the Cadillac. Wilson sought a new trial to call the Spokane police officer to testify that Wilson was driving a vehicle with the same plates on August 18. Wilson argued that this was newly discovered evidence because Wilson did not remember the traffic stop until he spoke with a friend after trial who reminded him of it. Wilson claimed that the evidence was impeachment evidence that would contradict Steele's testimony that the first time Wilson drove the car was on August 20. The trial court denied Wilson's motion, citing the factors from *State v. Savaria*, 82 Wn. App. 832, 919 P.2d 1263 (1996), *overruled on other grounds by State v. C.G.*, 150 Wn.2d 604, 611, 80 P.3d 594 (2003)), that entitle a defendant to a new trial due to newly discovered evidence.

The court sentenced Wilson and gave him notice of his right to appeal and to collateral attack. Wilson acknowledged receiving the notice and understanding it. On January 20, 2012, Wilson's trial attorney filed a notice of appeal.

## ANALYSIS

### MOTION TO CONTINUE

Wilson argues that the trial court abused its discretion when it denied his motion for a continuance. Because Wilson waited until the day before trial to tell his attorney about the witnesses, he failed to act with due diligence, and the trial court acted within its discretion to deny the continuance motion.

### A. STANDARD OF REVIEW

We review a trial court's decision to deny a motion for a continuance for abuse of discretion. *State v. Kenyon*, 167 Wn.2d 130, 135, 216 P.3d 1024 (2009). We will not disturb the trial court's decision "unless there is a clear showing it is 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" *Kenyon*, 167 Wn.2d at 135 (internal quotation marks omitted) (quoting *State v. Flinn*, 154 Wn.2d 193, 199, 110 P.3d 748 (2005)).

### B. DISCUSSION

In exercising its discretion, the trial court may consider the party's diligence, due process, the need for an orderly procedure, the possible impact on the trial, and whether it had granted any prior continuances. *State v. Early*, 70 Wn. App. 452, 458, 853 P.2d 964 (1993), *review denied*, 123 Wn.2d 1004 (1994). Impeaching and cumulative testimony are generally not significant enough such that a trial court must grant a continuance when requested. *State v. Simonson*, 82 Wn. App. 226, 234 n.17, 917 P.2d 599, *review denied*, 130 Wn.2d 1012 (1996); *State v. Eller*, 84 Wn.2d 90, 98, 524 P.2d 242 (1974).

Here, the trial court properly exercised its discretion and considered Wilson's lack of due diligence and the impact the new witnesses would likely have on the trial. The trial court specifically asked what the new witnesses would testify about; Wilson's attorney did not know exactly, but she expected them to testify that Wilson possessed the vehicle before August 20. The court concluded this testimony was not material and denied the motion, explaining that Wilson had months to prepare his alibi defense and that he should have disclosed the witnesses to his attorney earlier. Because the State had to prove Wilson unlawfully possessed the vehicle on August 23, not whether Wilson possessed the vehicle before that date, the evidence that the witnesses may have provided was insufficient to require a continuance. The trial court did not abuse its discretion when it denied Wilson's motion for continuance.

Wilson argues that his attorney was diligent by trying to contact the witnesses as soon as Wilson told her about them. But the proper inquiry is whether *the party* acted with diligence, not just whether the attorney did. *Early*, 70 Wn. App. at 458. Wilson should have told his attorney about the witnesses far earlier and he offers no explanation why he did not do so.

Next, Wilson argues that he had a due process right to present his version of the events to the jury and baldly asserts that he was prejudiced as a result of the court's denial. But the only prejudice he asserts is that the witnesses may have testified that he was in possession of the Cadillac before August 20 and that this would impeach Steele's testimony. But Jimerson's testimony was also aimed at undermining Steele's credibility. Therefore, the newly disclosed witnesses' testimony was cumulative as well as immaterial. The trial court properly exercised its discretion when it determined that the newly disclosed witnesses' testimony would have little impact on the trial outcome and that Wilson did not exercise due diligence in securing his witnesses.

6

NEW TRIAL

Wilson argues that the trial court abused its discretion in denying his motion for a new trial based on newly discovered evidence. We disagree. The trial court properly exercised its discretion because Wilson fails to show that the evidence was material and not discoverable before trial.

We review a trial court's decision to grant or deny a motion for a new trial for clear abuse of discretion. *State v. Mullen*, 171 Wn.2d 881, 905, 259 P.3d 158 (2011); *State v. Marks*, 71 Wn.2d 295, 302, 427 P.2d 1008 (1967). A defendant seeking a new trial must prove that the new evidence "'(1) will probably change the result of the trial; (2) was discovered after the trial; (3) could not have been discovered before trial by the exercise of due diligence; (4) is material; and (5) is not merely cumulative or impeaching.'" *Mullen*, 171 Wn.2d at 906 (quoting *State v. Macon*, 128 Wn.2d 784, 800, 911 P.2d 1004 (1996)). The defendant must show all five factors. *Mullen*, 171 Wn.2d at 906.

Here, the trial court properly considered the five factors and concluded that Wilson could not meet them all. The trial court primarily relied on the third factor, reasoning that Wilson failed to show that the evidence was not discoverable before trial since Wilson was aware that he received the traffic infraction. Also relying on the fourth factor, the trial court noted that the new evidence was not material because the traffic infraction did not identify the car Wilson was driving on August 18 and would not help Wilson establish he had permission to possess the Cadillac on August 23.

Wilson argues that his trial attorney could not have discovered the evidence because Wilson did not tell her about it. But our focus is not solely on the attorney's due diligence but on Wilson's due diligence as well. Wilson failed to exercise due diligence by neglecting to tell his

7

attorney about the infraction until after trial. Next, Wilson argues that the evidence was material because it would have contradicted Steele's testimony that Wilson took the Cadillac on August 20 and that Wilson had not been to the car lot any earlier than that date. But this argument concedes that the evidence was only impeaching. In order to establish the fifth factor, Wilson must show that the evidence was not merely cumulative or impeaching. This Wilson fails to do.

Finally, relying on *Savaria*, Wilson argues that the new evidence devastates Steele's uncorroborated testimony establishing an element of the offense. There, the defendant discovered new evidence that directly contradicted an element of the crime. *Savaria*, 82 Wn. App. at 838. Accordingly, in *Savaria*, the new evidence warranted a new trial. Wilson's case is distinguishable because the new evidence was not nearly as significant. To convict Wilson of unlawful possession of a stolen vehicle on August 23, the State had to show that Wilson unlawfully possessed the Cadillac on that date. So whether Wilson may have had permission to drive a vehicle with the same dealer plates on August 18 was immaterial to whether Wilson unlawfully possessed the Cadillac on August 23. Unlike *Savaria*, the new evidence here does not directly contradict an element of the crime. The trial court did not abuse its discretion.

INEFFECTIVE ASSISTANCE

In his SAG, Wilson asserts ineffective assistance of counsel regarding his appeal rights. In his PRP, Wilson asserts that his counsel failed to adequately investigate, failed to call, interview, or subpoena material witnesses, and failed to file a notice of appeal. We disagree and hold that Wilson received effective counsel.

A. SAG ASSERTION

To prevail on an ineffective assistance of counsel claim, a defendant must show that his attorney's representation was deficient and that he was prejudiced. *Strickland v. Washington*,

8

466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In his SAG, Wilson asserts that his trial counsel failed to consult with him about his appeal rights and that he was entitled to an appeal bond under RCW 10.73.040. At the sentencing hearing, the court gave Wilson notice of his right to appeal and to collateral attack. Wilson acknowledged receiving the notice and understanding it. Wilson's attorney filed a notice of appeal a few weeks later. Wilson does not explain how his attorney's representation was deficient, or how the result of the trial would have been different if he had been released on bond. Accordingly, Wilson fails to show that counsel was deficient or that he was prejudiced at trial as a result of his counsel's representation.

## B. REFERENCE HEARING

In a PRP, a petitioner alleging constitutional errors must meet a heightened standard of showing actual prejudice by a preponderance of the evidence before we will grant relief. *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 17, 296 P.3d 872 (2013). We will dismiss where a petitioner fails to make a prima facie showing of actual prejudice. *In re Yates*, 177 Wn.2d at 17. A petitioner seeking a reference hearing must offer "'the facts underlying the claim of unlawful restraint and the evidence available to support the factual allegations.'" *In re Yates*, 177 Wn.2d at 18 (quoting *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 885-86, 828 P.2d 1086, *cert. denied*, 506 U.S. 958 (1992)). A petitioner's bald assertions and conclusory allegations are insufficient to justify a reference hearing. *In re Yates*, 177 Wn.2d at 18. The petitioner must demonstrate that he has competent, admissible evidence to establish the matters outside the existing record that entitle him to relief. *In re Yates*, 177 Wn.2d at 18. Speculation or conjecture is insufficient. *In re Yates*, 177 Wn.2d at 18.

Here, Wilson asserts that he is entitled to a reference hearing because he received ineffective assistance of counsel due to counsel's failure to investigate and failure to call

witnesses to testify on his behalf. Wilson identifies two witnesses: Marcus Fletcher and Tomika Bates. But Wilson does not present affidavits from Fletcher or Bates or any other evidence of what their testimony would reveal if subpoenaed. Wilson's bald assertions and conclusory allegations are insufficient to justify a reference hearing.

## REMAINING SAG AND PRP ASSERTIONS

In his SAG, Wilson asserts he was denied a fair trial because during jury selection proceedings, the jury saw him wearing prison garb. An appellant is required to provide all information necessary for our review of an issue, and we may refuse to decide an issue where the record is incomplete. RAP 9.2(b); *State v. McFarland*, 127 Wn.2d 322, 338, 899 P.2d 1251 (1995) (appellate court will not consider matters outside the record). Here, the record is incomplete. Jury selection occurred on November 2. On that day, the court held an in camera proceeding to hear Wilson's concerns. Wilson expressed concern that his attorney had failed to provide him with street clothes to wear and so "[t]his officer had to give me some clothes to wear." RP (Nov. 2, 2011, in camera hearing) at 3. Wilson's attorney responded that clothes were brought to Wilson the day before. There is no other reference to what Wilson was wearing. Without a record of Wilson's clothing that day, we cannot determine whether he was dressed in prison garb in front of the jury. Accordingly, we will not address this issue.

Finally, in his PRP, Wilson baldly asserts that one of the State's witnesses committed perjury and refers us to "see transcripts." PRP at 3. Wilson does not identify which witness or why he believes that the witness committed perjury. Without additional information, we cannot address this assertion and Wilson cannot show actual prejudice. RAP 10.3(a)(6), 16.10; *In re Yates*, 177 Wn.2d at 17.

We affirm the conviction and dismiss the PRP.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, J.

We concur:

WORSWICK, C.J.

BJORGEN, J.

11