[No. 39043.    Department Two.    May 25, 1967.]

THE STATE OF WASHINGTON, *Appellant*, v. FLOYD D. MARKS, *Respondent.*\*

\*Reported in 427 P.2d 1008.

*George A. Kain* and *Lee A. Larson,* for appellant.

*Hamblen, Gilbert & Brooke (Wm. F. Nielsen,* of counsel) for respondent (appointed counsel for appeal).

DONWORTH, J.—Respondent, Floyd D. Marks, was charged by substitute information filed in superior court in Spokane County, with two counts of indecent liberties, committed on or about June 20, 1965, and August 24, 1965, on the person of a female child under the age of 15 years, to wit, 9 years of age. The original information had charged two counts of sodomy.

The trial began on May 16, 1966, and the case was submitted to the jury the following day. On May 18, 1966, the jury returned to the courtroom, and the foreman reported that, after having deliberated during the preceding 22 hours, the jury was unable to reach a verdict. His statement to the court was that the members of the jury were fairly far apart, and had indicated that they intended to stick to their decisions. The court told the jury:

> I think you had better deliberate a little while longer to see if you can't reach an agreement. You may go back and continue your deliberations.

Approximately an hour and a half later, the jury returned and rendered a verdict of guilty on both counts.

On June 1, 1966, a hearing was had on respondent's motion for a new trial. After hearing, the court granted the motion, and, in accordance with Rule of Pleading, Practice

and Procedure 59.04W, in its written order stated eight reasons for its ruling.

The state thereupon instituted this appeal, its sole assignment of error being that the trial court erred in setting aside the jury verdicts and in granting a new trial. Appellant's essential contention is that the trial court granted the motion for a new trial merely because it disagreed with the jury verdicts.

■ If this were the case, of course, the trial court's decision could not stand. See *Knecht v. Marzano*, 65 Wn.2d 290, 396 P.2d 782 (1964); *Bunnell v. Barr*, 68 Wn.2d 771, 415 P.2d 640 (1966). However, unless the reasons given by the trial court for granting a new trial are based merely upon a disagreement with the jury verdicts, the order of the trial court must be affirmed.

The reasons given by the trial court in its written order were:

1. There was no evidence that prosecuting witness, [name omitted], made timely complaint of alleged indecent liberties and no corroboration of any sort.

2. Due to surrounding circumstances there exists the possibility that prosecuting witness' testimony was influenced by a vindictive mother.

3. Mother, in effect, present in courtroom through presence of an older daughter.

4. Prosecuting witness' qualifications to testify marginal and doubtful.

5. Nature of alleged crime, criminal record of defendant and makeup of jury (ten women) [and two men] contributed to possible passion and prejudice on part of the jury.

6. Jury ordered by court to continue deliberations after professing to be in an impossible deadlock and returned a short time thereafter with guilty verdicts.

7. Prosecuting witness appeared to be inconsistent in her explanations of failure to make timely complaint and admitted to relying on mother for dates and other details.

8. As well as any other reasons given by the court in its oral opinion rendered June 1, 1966: all of which amounts to a failure of substantial justice.

These reasons, stated in the written order, are substantially the same as those given in the court's oral opinion granting respondent's motion. Since the written order expressly incorporates, by reference, the oral statement, we shall, on occasion, refer to the oral opinion for the purpose of clarification.

We are of the opinion that the most compelling of the reasons stated by the trial court is number 4, relating to the competence of the complaining witness to testify. We note that voir dire examination of the little girl consumed some 17 pages of the record, during which the trial court twice expressed the view that the witness was not competent to testify.

Appellant stresses the fact that the examination was conducted in the presence of the jury, and that, therefore, the jury had a sufficient opportunity to determine for themselves the competence of the complaining witness and assess what weight should be given her testimony.

■ But the question presented is not the weight to be given the child's testimony; it is whether she should have been permitted to testify at all. The question of law as to the competency of a witness to testify is solely for the court to decide. The jury has nothing to do with that problem.

■ In *State v. Allen*, 70 Wn.2d 690, 692, 424 P.2d 1021 (1967), we said:

> The true test of the competency of a young child as a witness consists of the following: (1) an understanding of the obligation to speak the truth on the witness stand; (2) the mental capacity at the time of the occurrence concerning which he is to testify, to receive an accurate *impression of it*; (3) a memory sufficient to retain an independent recollection of the occurrence; (4) the capacity to express in words his memory of the occurrence; and (5) the capacity to understand simple questions about it.
>
> The determination of the witness's ability to meet the requirements of this test . . . rest primarily with the trial judge who sees the witness, notices his manner, and considers his capacity and intelligence. *These are matters that are not reflected in the written record for appellate review.* Their determination lies within the sound discre-

tion of the trial judge and will not be disturbed on appeal in the absence of proof of a manifest abuse of discretion. *State v. Ridley,* 61Wn.2d 457, 378 P.2d 700 (1963), and authorities cited. (Italics ours.)

See, also, Stafford, *The Child as a Witness,* 37 Wash. L. Rev. 303 (1962).

In its oral opinion granting a new trial, the court stated:

[T]here was a very, very great doubt as to whether or not the alleged victim was qualified to testify at all.

We share the trial court's misgivings concerning the witness' qualifications, particularly with regard to provision (1) of the test stated in *State v. Allen, supra,* especially when viewed in the context of the circumstances of this case.

The first of those circumstances is indicated by the trial court's stated reason number 1 in support of its order relating to the ancient doctrine of "hue and cry." See *State v. Murley,* 35 Wn.2d 233, 212 P.2d 801 (1949). In the present case, the alleged offenses occurred on or about June 20, 1965, and August 24, 1965. No mention of the incidents was made to anyone by the complaining witness until sometime after she had returned to school in September, 1965.

Closely related is the trial court's stated reason number 7, to wit, that the prosecuting witness appeared to be inconsistent in her explanations for failure to make timely complaint, and her admission that she relied on her mother for dates and other details. Following the state's case, respondent made a motion to dismiss the information for insufficiency of the evidence. One ground for such motion was the failure of timely complaint on the part of the prosecuting witness.

Although the court denied the motion, it observed:

She testified yesterday the reason she didn't tell was because she promised the defendant she wouldn't tell, and didn't until she got mad at him . . .

She also told somebody, who told you [the prosecutor], who told me, that she didn't tell because she was afraid of the defendant until he was locked up. Two inconsistent stories, which troubles me some.

. . . I think it is true that the tardiness of the complaint certainly casts considerable doubt upon its correctness. But I agree also with the prosecutor that the evidence is enough to make a jury question of it.

In its oral statement granting respondent's motion for a new trial, the trial court said:

There was no corroboration, as there seldom is in these cases, and of course under the law there need not have been. However, there is a factor particularly lacking in this case. There was no timely complaint. The little girl made no complaint until some months after the alleged incidents took place, and at that time had to guess at the dates with help from her mother, figuring back to when it might have been with relation to other things.

More than that, the child told two stories, one of which is in the record, and one of which came out in discussions with counsel in chambers, as to why it had been so long from the time these incidents were alleged to have happened until she reported them to her mother.

At one time she said—the prosecutor told the court —she was afraid of the defendant. However, in the courtroom she evinced no fear of the defendant. On the contrary, she smiled at him quite pleasantly in friendly fashion. The other thing she testified during the trial; she told the defendant she wouldn't tell, and that she hadn't done so until she got mad at him. She got mad at him at the time she found out her mother was mad at him.

Closely involved is the trial court's stated reason number 2, that, due to the surrounding circumstances, there existed the possibility that the prosecuting witness' testimony was influenced by a vindictive mother.

In the court's oral opinion, it was stated that:

There is too much danger here in this case, I believe, of vindictiveness on the part of the mother, who was for some reason or other angry with the defendant who, according to the testimony, she had plans of marrying. He was often around the home and the girl, and the defendant and child's mother were quite close until some altercation took place, and then at some time after that, the prosecution of the defendant by the victim's mother occurred. First an assault charge was filed, and he was convicted of that, and then subsequent to that this prosecution commenced and ultimately resulted in the trial.

Another thing that shows, too, some considerable concern on the part of the child's mother is the fact that she sat throughout the trial in the back of the courtroom with an older daughter to watch the proceedings, and manifested considerable interest in them.

In connection with the last statement, we note here the trial court's stated reason for granting the motion denominated number 3, which was that the mother, although excluded from the courtroom with all witnesses, was, in effect, present in the courtroom through the presence of her older daughter.

Early in the proceedings, respondent moved for the exclusion of all witnesses from the courtroom. That motion was granted by the court. The trial court apparently felt that the object to be gained by that procedure was defeated by the older sister's presence in the courtroom.

Although two additional reasons are stated by the trial court in support of its decision to grant a new trial, we need not discuss those additional grounds here. We are of the opinion that what has already been reviewed amply shows that the trial court did not abuse its discretion in granting a new trial.

█ While possibly none of the facts or circumstances referred to in the order, in and of themselves, would suffice to warrant a new trial (no single factor was solely relied on by the trial court), the combined effect of the several circumstances prompted the trial court's order granting a new trial to respondent. As stated by this court in *State v. Badda,* 63 Wn.2d 176, 183, 385 P.2d 859 (1963):

> The combined effect of an accumulation of errors, no one of which, perhaps, standing alone might be of sufficient gravity to constitute grounds for reversal, may well require a new trial. *State v. Simmons,* 59 Wn. (2d) 381, 368 P. (2d) 378; *State v. Swenson,* 62 Wn. (2d) 259, 382 P. (2d) 614.

The order of the trial court in this case was not based entirely upon matters of record, as was the order of the trial court in *Bunnell v. Barr,* 68 Wn.2d 771, 415 P.2d 640; nor do the reasons stated by the trial court indicate mere disagree-

ment with the jury verdicts. *Knecht v. Marzano,* 65 Wn.2d 290, 396 P.2d 782.

■ The trial court is invested with broad discretion in granting motions for a new trial, and the trial court's determination will not be disturbed on appeal absent an abuse of discretion. *Bunnell v. Barr, supra.* As we said in *State v. Taylor,* 60 Wn.2d 32, 42, 371 P.2d 617 (1962).

> The trial judge, by his very presence, is in a favored position. It has been reiterated in appeals from orders granting new trials in both civil and criminal cases that a much stronger showing is required to overturn an order granting the new trial than denying a new trial. The question is: Did the respondents have a fair trial? The trial judge thought that they did not. The question is not whether this court would have decided otherwise in the first instance, but whether the trial judge was justified in reaching his conclusion. In that respect, he has a very wide discretion.

As in the *Taylor* case, we are not disposed to interfere with the discretion the trial court exercised. The order of the trial court granting a new trial is, accordingly, affirmed.

FINLEY, C. J., HAMILTON, J., and BARNETT, J. Pro Tem., concur.