[No. 28149-0-II.   Division Two.   March 11, 2003.]

HEIDI GESTSON, ET AL., *Respondents*, v. GAYLA SCOTT, ET AL., *Appellants*.

---

[35] *See* instruction 10.

*Mark S. Brumbaugh* and *Matthew J. Andersen* (of *Walstead, Mertsching, Husemoen, Donaldson & Barlow, P.S.*), for appellants.

*John M. Oswald* (of *Bottini Bottini & Oswald*) and *James J. Dore*, for respondents.

SEINFELD, J. — Heidi and Joel Gestson sued Gayla and Richard Scott for injuries and damages arising out of an incident where Gayla Scott backed her van into Heidi Gestson's car. Although the Gestsons claimed medical expenses of $65,000, along with general damages, the jury's total award was only $458.34, the cost of Heidi Gestson's emergency room visit. The trial court granted the Gestsons' motion for a new trial. Holding that substantial evidence supports the verdict and, given the evidence in this case, the jury could award special but no general damages, we reverse.

## FACTS

Gayla Scott (Scott) and Heidi Gestson (Gestson) were involved in a car accident on October 22, 1998. They had been waiting in line at a bank drive-through window; Scott's van was immediately ahead of Gestson's two-seater, convertible sports car. When Scott decided to enter the bank on foot instead of waiting in the drive-through line, she backed up while looking through her rear window. She did not see Geston's shorter car and her rear bumper contacted Geston's front bumper, causing minimal damage.

Immediately following the incident, Gestson went to the St. John Medical Center emergency room, where she was

examined, diagnosed with lower back strain and chronic lower back pain, and released in satisfactory condition. She also went to Kaiser Permanente Urgency Care Unit that same day and started chiropractic treatments with Dr. Dale Powers the next day.

Throughout the 1990s, Gestson had experienced chronic and significant back pain and she was on a 35-pound weight restriction at work. Six months after the incident, Dr. Darrell C. Brett diagnosed her with a C5-6 disk herniation. One month after this diagnosis, Brett performed an "[a]nterior cervical diskectomy, foraminotomy and neural decompression followed by interbody fusion [at Gestson's] C5-6" to repair the herniated disk. Ex. 50A.

In this lawsuit, the Gestsons sought the medical expenses they incurred as a result of the car accident, pain and suffering from Gestson's resulting physical injuries, lost wages, loss of conjugal rights, and loss of consortium. And they presented evidence of a $458.34 expense for the emergency room visit and $48,661.41 for other medical expenses allegedly resulting from the accident, including spinal surgery.

Several experts testified at trial, including Brett, Powers, Dr. Clinton Wayne Van Fleet, and Dr. Thomas Gritzka. The jury awarded only the $458.34 for the emergency room visit.

The Gestsons moved for a judgment notwithstanding the jury verdict, for a new trial, or for reconsideration. The trial court granted their motion for a new trial and denied their other requests.

The Scotts appeal, arguing that the trial court erred by granting the motion for a new trial.

## DISCUSSION

The Scotts argue that substantial evidence supports the jury's verdict and, thus, the trial court improperly concluded that the verdict was the result of passion or prejudice necessitating a new trial.

The Gestsons moved for a new trial under CR 59(a)(5), (7), (8), and (9). The trial court granted the motion, but it did not state whether it was relying on facts in or outside the record, and, if the former, what reasons in law or in fact supported the order. *See* CR 59(f).[1]

■■ The purpose of CR 59(f) "is to permit appellate review of the basic question raised by an order granting a new trial, which is whether the party received a fair trial." *Dybdahl v. Genesco, Inc.*, 42 Wn. App. 486, 488, 713 P.2d 113 (1986) (citing *Olpinski v. Clement*, 73 Wn.2d 944, 951, 442 P.2d 260 (1968)). But when confronted with an order granting a new trial that does not comply with CR 59(f), we may resort to the trial court's oral opinion. *See Knecht v. Marzano*, 65 Wn.2d 290, 292, 396 P.2d 782 (1964).

■ The trial court's oral opinion reveals that the court based its order solely on CR 59(a)(5): "Damages [were] so excessive or inadequate as unmistakably to indicate that the verdict must have been the result of passion or prejudice." The trial court ruled that (1) a jury cannot order special damages without also ordering general damages; and (2) because the jury awarded the Gestsons special damages for the emergency room visit, but no general damages for the time Gestson expended visiting the emergency room, its verdict was the product of passion or prejudice. We review this decision for an abuse of discretion. *Palmer v. Jensen*, 132 Wn.2d 193, 197, 937 P.2d 597 (1997).

■ A jury may award special damages and no general damages when "the record would support a verdict omitting general damages." *Palmer*, 132 Wn.2d at 202 (upholding a jury's verdict awarding only special damages of $34 to a car

---

[1] CR 59(f) provides that

[i]n all cases where the trial court grants a motion for a new trial, it shall, in the order granting the motion, state whether the order is based upon the record or upon facts and circumstances outside the record which cannot be made a part thereof. If the order is based upon the record, the court shall give definite reasons of law and facts for its order. If the order is based upon matters outside the record, the court shall state the facts and circumstances upon which it relied.

accident victim for the cost of a medical office visit when the record showed that his injuries were minimal and that he required no further medical care). The record here, as in *Palmer*, supports the award of only limited special damages.

Gestson presented no evidence of pain, suffering, or inconvenience associated with her visit to the emergency room; nor did she establish the length or value of the time she spent during her emergency room visit. Thus, the record supports the jury award of special damages only for the expenses related to the emergency room visit; it was error to grant a new trial on the basis that the law does not permit a jury to award only special damages.

■ The trial court also based its decision to grant a new trial on its conclusion that the jury's award of special damages without general damages demonstrated that the verdict was the product of passion or prejudice. Granting a new trial on the basis of inadequate damages is within the discretion of the trial court. *Thogerson v. Heiner*, 66 Wn. App. 466, 470, 832 P.2d 508 (1992). "A much stronger showing of abuse of discretion will be required to set aside an order granting a new trial than an order denying one because the denial of a new trial 'concludes [the parties'] rights.'" *Palmer*, 132 Wn.2d at 197 (quoting *Baxter v. Greyhound Corp.*, 65 Wn.2d 421, 437, 397 P.2d 857 (1964)). But because determining damages is within the jury's province, courts are reluctant to interfere with a jury's damage award that is fairly made; "[w]here sufficient evidence exists to support the verdict, it is an abuse of discretion to grant a new trial." *Palmer*, 132 Wn.2d at 198.

■ Alleged passion or prejudice on the part of the jury is not grounds for granting a new trial under CR 59(a)(5) unless the record indicates that the verdict was not within the range of proven damages. *James v. Robeck*, 79 Wn.2d 864, 870-71, 490 P.2d 878 (1971). If a jury award is within the range of evidence, it is error to rule that juror passion or prejudice motivated the award. *Wooldridge v. Woolett*, 96 Wn.2d 659, 668, 638 P.2d 566 (1981). Established items of

damages include those that are conceded, undisputed, and beyond legitimate controversy. *Krivanek v. Fibreboard Corp.*, 72 Wn. App. 632, 636, 865 P.2d 527 (1993).

Here, the evidence indicates that the contact between the vehicles created a need for Gestson to visit the emergency room for an immediate checkup. Thus, the record supports the award of special damages for the emergency room visit. The question is whether passion or prejudice motivated the jury to limit its special damages to only the emergency room visit, thereby excluding damages arising out of Gestson's alleged neck injury. To show that the jury was not so motivated, the Scotts must show that the record contains sufficient evidence to support the jury's conclusion that Scott was not liable for Gestson's neck injury.

To determine if the record supports the jury's verdict for the purpose of deciding a motion for a new trial, the court must view the evidence in the light most favorable to the nonmoving party, here the Scotts. *Kohfeld v. United Pac. Ins. Co.*, 85 Wn. App. 34, 41, 931 P.2d 911 (1997). Thus, we look to the record for evidence regarding the causal connection between the car accident and Gestson's neck injury.

Gestson testified that (1) while she was looking down in her wallet, Scott's van hit her car "pretty hard," causing her body to move forward and then backward (Report of Proceedings (RP) (Oct. 23, 2001) at 98); (2) immediately afterward she suffered substantial lower back pain and spasms shooting down her legs; (3) later that night, she developed a severe headache and her neck began bothering her; (4) the next day, she visited Powers, a chiropractor, complaining of neck pain; and (5) she continued to see Powers for treatment of her back and neck pain. Powers testified that Gestson complained of neck pain and stiffness throughout her treatment.

Bank teller Lisa Smith, who observed the accident, testified that Scott did not roll but reversed into Gestson's car and Gestson complained of neck pain immediately afterward. Van Fleet, a chiropractor who had treated Gestson for lower back pain several times during the

months preceding the accident, testified that Gestson had never complained to him about experiencing neck pain during that period. And Gestson presented several experts[2] who each gave an opinion on a more probable than not basis that the car accident caused Gestson's neck injury.

But the Scotts' evidence and cross-examination of the Gestsons' witnesses raised doubts as to the causal connection between the accident and Gestson's neck injury. Scott testified that (1) she only traveled "like a half a car length maybe," at "[m]aybe one mile an hour," without having "time to put [her] foot on the gas pedal"; (2) she "didn't feel any impact or anything," but just bumped into Gestson and her van stopped, without jostling or bouncing her; and (3) Gestson "wasn't crying or anything" immediately after the accident. RP (Oct. 23, 2001) at 131-33. And Scott's passenger, Debbie Fittro, testified that she was not bounced or jostled by the impact, describing it as feeling like the van had bumped into a curb.

Scott introduced photographs of her van, which was undamaged by the accident, and of the minor damage her van caused to Gestson's car. Specifically, the accident slightly disfigured Gestson's front bumper by denting it in two places at the license plate attachments. Powers acknowledged that, in his opinion, a car accident involving a greater impact is *generally* more likely to injure a person than one involving lesser impact.

Further, the emergency room records from Gestson's visit note that she had "[n]o complaints of headache or neck pain. . . . [or] extremity numbness or weakness." Ex. 56. And Kaiser's records for the evening of the accident noted only that Gestson was experiencing low back pain "localized to same area as her chronic back pain but more severe." Ex. 58.

The day after the accident, Gestson filled out a questionnaire at Powers's chiropractic office. She did not mention

---

[2] The experts included Brett, the neurosurgeon who diagnosed and surgically repaired the injury to Gestson's neck, and Gritzka, an orthopedic surgeon who examined Gestson at her attorney's request.

any neck pain or stiffness, restriction of motion in her neck, or pain radiating into her neck. She merely referenced headaches and mid and lower back pain and stiffness. Most significantly, she indicated that within the previous two years she had experienced headaches, numbness, *neck pain* or stiffness, and foot problems.

Moreover, Gestson testified that throughout the 1990s, before the incident here, she had experienced significant lower back pain,[3] pain and numbness in her arms, and *neck problems*. Although Powers testified that Gestson complained of neck pain and headache upon her initial visit and throughout treatment, he also testified that Gestson was not experiencing any symptoms beyond those she had indicated as preexisting conditions. And Van Fleet's notes from May 8 and 13, before the October incident here, indicate that Gestson had complained of aching and numbness in her left arm and hand at that time.

Brett and Gritzka testified that they based their opinion that it was more probable than not that the accident caused Gestson's neck injury, in part, on the symptomatic information Gestson provided to them, specifically, her reports of experiencing neck pain and stiffness, numbness in the arms, and headache shortly after the accident but not before. They acknowledged that inaccuracies in the symptomatic information they received from Gestson might produce inaccuracies in their opinions.

■ Given the Scotts' evidence that (1) the vehicular impact may have been less than Gestson described to her medical providers; and (2) Gestson experienced neck pain and stiffness, numbness in her arms, and headaches before the accident, the jury could properly disregard the opinions of the Gestsons' experts. *See Jarstad v. Tacoma Outdoor Recreation, Inc.*, 10 Wn. App. 551, 556, 519 P.2d 278 (1974) (recognizing that a trier of fact may disregard expert opinion when information supplied to the expert contained

---

[3] Van Fleet's notes recorded May 8, 1998, state that in 1993, Gestson jumped off a cliff into two feet of water and landed on a rock, injuring her tailbone.

irregularities evidencing that it was incomplete or unreliable).

Viewing the evidence in the light most favorable to the Scotts, the record contains sufficient evidence to support the jury's conclusion that the Gestsons failed to prove by a preponderance that the car accident caused Gestson's neck injury. As the record shows that the jury's award of only special damages limited to Gestson's emergency room visit was within the range of proven damages, the trial court erred by granting the Gestsons' motion for a new trial under CR 59(a)(5).

Accordingly, we reverse the trial court's order granting Gestson's motion for a new trial.

HUNT, C.J., and MORGAN, J., concur.