IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 31579-7-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JAIME SALVADOR SILVA GONZALES, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Jaime Salvador Silva-Gonzales appeals from the denial of his

motion for a new trial, contending that his counsel labored under a conflict of interest

because he was a necessary witness at trial. Since he did not establish that claim before

the trial court, we affirm.

## FACTS

Mr. Silva-Gonzales was convicted by a jury of first degree unlawful possession of

a firearm and attempting to elude. The jury acquitted him of felony harassment. He was

represented at trial by attorney Etoy Alford. The firearm possession charge was based on

a gun found in the trunk of the defendant's car. Co-defendant Marisela Mora, a

passenger in the car, pleaded guilty to unlawful possession of a firearm shortly before

trial and testified in Mr. Silva-Gonzales' defense.

At the beginning of trial on March 25, 2013, defense counsel moved to exclude recordings of telephone calls made by Mr. Silva-Gonzales on the basis that they were unduly prejudicial. The court directed the prosecutor to specify the portions of the records that he was intending to use and ultimately admitted those portions after finding that the probative value of the records outweighed their prejudicial impact. Segments of two different recordings are at issue in this appeal.

The first conversation occurred July 19, 2012. There Mr. Silva-Gonzales expressed to his girlfriend a desire to know what was in the police reports of Ms. Mora's case. He needed to "take care of her" and send her money because "she's saying everything was hers." Report of Proceedings (RP) at 265-66. Another conversation, from the following day, eventually made its way, in part, before the jury:

> MR. SILVA: It was my vehicle. I knew I shouldn't have put that fucking car in my name. Anyway, um, the only thing just looking back the car was in your name, I said yeah, but I said that we both know that the reason that it's locked up with something, it's not in the -- it's not the same thing as it being in a common area.

RP at 266.

Defense counsel renewed his objection to the use of the recordings on the third day of trial, March 27. He argued the prejudicial nature of the comments and the general unfairness of recording jail conversations. He concluded his argument with a condemnation of the July 20th call:

2

> Your Honor, the one that is the most troubling to me is the one about with my client supposedly talking about what was locked away in a trunk. It puts him in such a position where he needs to testify or has to testify as to where he got this information, when he got that information, and then talking about conversations that he had with me. I hate to say this again, Judge, and I'll say it and it happens so often, but this taint [sic] fair.

RP at 191.

The two noted conversations were admitted later that day during the testimony of the State's final witness. Shortly after the witness began to testify, defense counsel moved to withdraw on the basis that he was a necessary witness. The court denied the motion and allowed the testimony to continue. The State rested and the court took its noon break.

The afternoon session began with defense counsel renewing his argument that he was now a witness. The trial court disagreed, stating:

> And, again, and I'll elaborate, I guess on why I did is that these issues, if it is an issue, and I don't think it is an issue, it's an innocuous portion of the conversation that was recorded and then played subsequently for the jury this morning, has been part of this case since Mr. Silva Gonzalez [sic] first had that conversation last summer and obviously the State's been aware of it and the defense has been aware of it and all of a sudden it becomes an issue requiring that Mr. Alford withdraw and that the Court declare a mistrial on the third day of trial, okay, after the State is about to rest, just before the State is about to rest. I think it's too late and even if it was, and I don't think -- I think it's innocuous in the extreme.

RP at 271. The judge went on to finalize his thoughts:

> . . . but in any event it still -- the issue is whether this is something that all of a sudden arose this afternoon -- or this morning or something that has been within the knowledge of the defense for weeks or months on end and I

3

don't think in getting back -- I don't think you can --plainly what it looks like is you hid in the weeds and then sprung this at the last moment when you think it would -- when you thought it would have the most impact and I don't think that that's appropriate.

RP at 272.

The court denied the motion and the defense called its only witness, Ms. Mora. She claimed ownership of the gun and told jurors that she had put the weapon in the trunk without Mr. Silva-Gonzales' knowledge. She explained that was why she had pleaded guilty and was testifying on Mr. Silva-Gonzales' behalf.

The parties argued the case on competing theories, with the State contending it was Mr. Silva-Gonzales' car and he had knowledge of the gun's presence in the trunk, while the defense argued that Ms. Mora was responsible. However, the jury did not accept her testimony and convicted Mr. Silva-Gonzales of the two noted counts. His counsel then brought a motion for a new trial, renewing his argument that he had a conflict of interest resulting from the fact that he was a necessary witness in the case.

After hearing argument, the trial judge again disagreed:

The one issue, I guess, that Mr. Alford -- or actually I would clarify and would say the defendant, wishes to present relates to the issue of whether Mr. Alford was a witness or became a witness in the course of the trial. The circumstances of the second jail phone call were obvious to all from the point where it was first recorded and first disseminated both for the State as well as to the defense. However, and for reasons that I can speculate about, that the issue of Mr. Alford needing to withdraw and be -- make himself available to be a witness which would have obviously resulted in a mistrial on the third day of trial immediately before the State was intending to rest its case, appears to me to be an attempt on the defendant's

4

No. 31579-7-III
*State v. Silva-Gonzales*

part because the conversation at sidebar was my client wants me to testify as
I recall, it's when Mr. Alford (inaudible), that there was an obvious attempt
to cause a mistrial and to get a do over. I don't think the defendant can wait
until that point in the proceeding to spring the trap, as it were, and I think
that that is in fact what the case of what happened in this particular case.

The other part of it is that if there was any type of prejudice, and I
don't see how there possible [sic] could have been any prejudice, it was
mitigated or eliminated through Mr. Alford's final argument and Mr.
Hintze's agreement in final argument that in fact that Mr. Alford could have
been the source of the information. So, it clearly is a non-issue and it is an
attempt, I believe, on Mr. Gonzalez's [sic] part to get a new -- to create a
mistrial and to get a do over, and so on that basis if for no other, I am going
to deny the motion for a new trial.

RP at 409.

After the motion was denied, a standard range sentence was imposed. Mr. Silva-

Gonzales then timely appealed to this court.

ANALYSIS

The sole issue presented by this appeal[1] is whether the court erred in denying the

motion for a new trial. We conclude that the court did not abuse its discretion because

the defense did not establish the necessity for Mr. Alford to testify.

A trial court's decision to grant a new trial is reviewed for abuse of discretion.

*State v. Marks*, 71 Wn.2d 295, 302, 427 P.2d 1008 (1967). Discretion is abused when it

---

[1] In his statement of additional grounds, Mr. Silva-Gonzales reiterates some of his
counsel's arguments from trial about the fairness of using the jail recordings. The trial
court carefully considered those arguments and did not abuse its discretion in admitting
the limited portions of the recordings. The defense also declined to offer a limiting
instruction, so no error can be predicated on that alleged failure.

5

is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). "The question is not whether this court would have decided otherwise in the first instance, but whether the trial judge was justified in reaching his conclusion." *State v. Taylor*, 60 Wn.2d 32, 42, 371 P.2d 617 (1962). Discretion also is abused when it is exercised contrary to law. *State v. Tobin*, 161 Wn.2d 517, 523, 166 P.3d 1167 (2007).

Similarly, the decision whether or not to disqualify an attorney is one an appellate court reviews for abuse of discretion. *Pub. Util. Dist. No. 1 of Klickitat County v. Int'l Ins. Co.*, 124 Wn.2d 789, 812, 881 P.2d 1020 (1994); *Am. States Ins. Co. ex rel. Kommavongsa v. Nammathao*, 153 Wn. App. 461, 466, 220 P.3d 1283 (2009). RPC 3.7 states the lawyer as witness rule. The section relevant to this case provides:

> **(a)** A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
> . . . .
> (3) disqualification of the lawyer would work substantial hardship on the client.

The trial court concluded that defense counsel was not a "necessary witness" because the evidentiary point at issue was minor and not raised until the end of the State's case even though the recordings had been disclosed many months earlier. We agree that Mr. Silva-Gonzales has not established that his counsel was a *necessary* witness.

First, as the trial judge noted, this was a minor point. The issue of *how* Mr. Silva-Gonzales knew about Ms. Mora's statements was largely irrelevant. The conversation on

6

the 19th of July showed that he already knew, before he had spoken with his attorney, that Ms. Mora was claiming "everything was hers." His desire to know the details of the police reports—and how he would eventually acquire them—would not explain what he already knew about her statements. His attorney was not in a position to enlighten the jury on how Mr. Silva-Gonzales was aware of Ms. Mora's statements to the police prior to counsel providing the information to him. The fact that the defendant later acquired the reports was not relevant to explaining his desire on the 19th to assist Ms. Mora because she was trying to take the fall for him.[2]

Second, the statement on July 20th lamenting that he had registered the car in his name was not a significant admission since the State already had that evidence. The fact that the statement also alluded that the car is "locked up with something" is not contradictory of Ms. Mora's claim of ownership of the gun in the trunk. While it suggests he knew why he was in trouble, it does not itself suggest that the gun in the trunk was his or that he knew about the gun in the trunk before the arrest. The statement was not significant evidence of "guilty knowledge" before-the-fact.

Third, counsel never showed why he, and he alone, could provide the information and why the information was critical to the case. Before the conversation on the 20th,

---

[2] Ms. Mora also testified that she made statements to the police upon arrest, as well as the substance of those statements, and the detective did as well. Neither witness was asked if she or he communicated the information to Mr. Silva-Gonzales.

7

Mr. Silva-Gonzales showed that he had knowledge that Ms. Mora was claiming ownership of "everything." To the jury, that mysterious source of information was very likely the reason he knew something was locked in the trunk; it was unlikely to infer some before-the-fact knowledge of the gun's presence. The jury might also speculate, if it even cared to consider the topic, that the defendant had seen the police reports. Thus, the evidence that counsel told his client about the case does not appear to weigh in on an important fact, let alone that counsel was the only one who could provide that information. There simply was no showing that the information was important.

Finally, counsel was free, if he truly deemed his testimony of great import, to ask to be a witness and remain as counsel.[3] RPC 3.7(a)(3) permits the practice if the disqualification would work a great hardship for the client. One "valued right" protected by double jeopardy principles is the right of a defendant to have the charges against him or her resolved by a particular tribunal. *Wade v. Hunter*, 336 U.S. 684, 689, 69 S. Ct. 834, 93 L. Ed. 974 (1949). Permitting counsel to testify under those circumstances would ensure his client did not suffer the hardship of losing his current jury panel. Here, Mr. Alford never made the argument that he could both testify and continue as counsel. The trial court, understandably, could consider his request to withdraw, and thereby force a

---

[3] We believe that in most instances, counsel would prefer not to testify about advice and information given his client since that would waive the attorney-client privilege and open counsel up to examination concerning the entire conversation.

mistrial, as indication that the desire to testify was motivated by a desire to obtain a mistrial rather than a genuine desire to become a witness.[4]

Accordingly, the trial court had a very tenable reason for denying the motion for a new trial—the defense never established the necessity for counsel to testify. The information was not of great import, and the defense never established that alternative sources of that information were unavailable. Because there was a tenable basis for denying the motion, the trial court did not abuse its discretion.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Korsmo, J.

___

[4] Indeed, the fact that counsel might need to become a rebuttal witness could have been an important point for the prosecutor to consider when deciding whether to even offer the testimony of the July 20th conversation in evidence if the result would be the need for a new attorney to be assigned the case. That defense counsel did not even make this argument in a timely fashion during the motion in limine was also suggestive to the trial judge that the testimony was not necessary, a conclusion that Judge McCarthy certainly drew here.

31579-7-III

FEARING, J. (concurring) — I agree with the majority's affirmation of the trial court's ruling denying defense counsel's motion to withdraw on the ground that the trial court did not abuse its discretion when finding that counsel was not a necessary witness. I depart from the majority's decision when the majority mentions that "counsel was free, if he truly deemed his testimony of great import, to ask to be a witness and remain as counsel." Majority at 8. This comment by the majority unfairly impugns the integrity of trial counsel, since the remark implies that counsel forwarded the motion for withdrawal as a delay tactic rather than from an honest concern about the conflict of interest.

I also disown the majority's comment because criminal defense counsel should rarely, if ever, testify during a jury trial. Agreeably, RPC 3.7(a)(3) allows testimony from trial counsel. Nevertheless, testimony puts counsel in two incompatible roles, witness and advocate. A criminal defendant suffers in the eyes of the jury when his or her trial counsel assumes both undertakings.

WE CONCUR:

_____
Fearing, J.

_____
Lawrence-Berrey, J.