

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 36180-2-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHRISTOPHER P. ROBBINS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Christopher Robbins appeals from Okanogan County convictions for unlawful imprisonment and third degree driving while license suspended (DWLS), arguing that a new trial should have been granted due to the absence of a defense witness and prosecutorial misconduct. We affirm the convictions and remand to correct the sentence.

## FACTS

Robbins drove a female acquaintance to a barter fair near Tonasket and they slept in his car in a camping area at the fair. The victim testified that he touched her breast without permission; she told him not to touch her. After the two had dozed, he asked her to share his sleeping bag. When she did not show any inclination to join him, he started driving the car up a hill away from the people at the fair.

The victim repeatedly told him she did not want to go and to let her out; he kept driving. She could not open the car door while the vehicle was moving. She struck him and eventually stabbed him in the hand with a knife she carried in her bag. The car stopped and she fell out when the door opened. She then ran to a group of people and took cover in a nearby car. The incident was reported to fair security and they contacted the county sheriff's office.

Robbins denied touching the victim or asking her to share his sleeping bag. He did ask her to have a sexual relationship, but she declined. He then looked for somewhere to let her out of his car. He agreed that she had stabbed his hand and that she fell out of the car when the door opened. On cross-examination the prosecutor asked about two statements Robbins allegedly made to the police—that he had met the victim the day before and that the pair had arrived at the barter fair about 8:00 a.m. on the day of the incident. He denied making them. The prosecutor also showed Robbins a letter and asked if he wrote it. He denied doing so. The letter was not admitted into evidence.

On the morning of the second day of trial, defense counsel advised the court that a defense witness, Michael Sackman, had not responded to his subpoena and was not present in court. Sackman was expected to impeach the testimony of the victim by relating a conversation he had with her after the incident. His location was unknown, though it was believed he might be at his girlfriend's residence in Tonasket. The court authorized a material witness warrant and told the defense that the case would stay on

2

schedule if Sackman was not present by the time the defense rested. Defense counsel did not challenge the schedule. The jury then heard testimony from a deputy sheriff and the victim. The victim was not cross-examined about her alleged conversation with Sackman. The State then rested its case around 11:00 a.m. Defense counsel presented the warrant to the court for signature at 11:10 a.m.

Mr. Robbins testified on direct examination before lunch and was cross-examined when court resumed at 1:22 p.m. The defense rested at the conclusion of his testimony; Sackman had not appeared. Defense counsel did not request a continuance of trial and the parties proceeded with closing argument. The prosecutor argued, without objection, that Mr. Robbins had told officers that the two had arrived at the barter fair at 8:00 a.m. and that he had only met the victim the day before.

Later that day, the jury was unable to reach a verdict on the original charge of second degree kidnapping, but did convict Mr. Robbins of DWLS and the lesser included offense of unlawful imprisonment. Around 1:00 a.m. the following morning, the material witness warrant was served on Sackman and he was booked into the county jail. When notified, the trial judge directed Sackman's release because the trial had concluded. Sackman was then booked into jail on a different matter. Robbins promptly moved for a new trial due to an irregularity that denied him a fair trial. CrR 7.5(a)(5). After setting the matter over for briefing, the court denied the motion. In the court's view, the

proposed impeachment testimony would not have changed the verdict and Sackman's

absence from trial was never explained.

The court imposed a standard range sentence of 55.5 months in prison on the

unlawful imprisonment charge and a term of 12 months of community custody upon

release. The judgment also included a provision that the total sentence could not exceed

the statutory maximum term of 60 months.

Mr. Robbins timely appealed to this court. A panel considered his appeal without

hearing argument.

ANALYSIS

Appellant argues that the court erred in not continuing the trial due to Sackman's

absence and by denying the new trial motion for the same reason. He also contends that

the prosecutor's closing argument constituted misconduct, that cumulative error requires

a new trial, and that his sentence exceeded the maximum allowed by law. We treat the

two missing witness arguments as one before addressing the misconduct and sentence

issues. In the absence of multiple errors, we do not address the cumulative error claim.

*Missing Witness*

Mr. Robbins argues that the trial court erred in responding to Sackman's absence.

The trial court did not abuse its discretion.

A trial court's continuance ruling is reviewed for abuse of discretion. *State v.*

*Downing*, 151 Wn.2d 265, 272, 87 P.3d 1169 (2004). Similarly, a trial judge's decision

4

on a motion for a new trial is reviewed for abuse of discretion. *State v. Marks*, 71 Wn.2d 295, 302, 427 P.2d 1008 (1967). Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

Mr. Robbins initially argues that the court erred in denying a continuance. The main problem with this argument is that he never requested a continuance. Counsel postulated early that more time might be needed to find Sackman, but never requested that the court recess or continue the trial to allow more time for the missing witness to be located. A trial judge cannot abuse discretion he was never asked to exercise.

Even if counsel's statements could have been interpreted as an unequivocal request to extend the trial in order to secure the witness's attendance, the court would not have abused its discretion by denying the request. In granting a continuance to secure the attendance of a witness, the trial court may consider the likelihood of locating the witness, the materiality of the proposed testimony, and the court's interest in the maintenance of orderly procedure. *Downing*, 151 Wn.2d at 273. Here, Robbins did not demonstrate that Sackman could easily be located and brought in to testify in a reasonably prompt manner. He also could not show that Sackman's testimony had any purpose other than to impeach the victim. However, impeachment testimony is not a basis for continuing a trial. *State v. Harris*, 12 Wn. App. 481, 496-497, 530 P.2d 646 (1975). With no reason to know if Sackman could be located in a timely manner and no

substance to his testimony, the trial court could not have erred in denying a continuance. There was no abuse of discretion.

Robbins also argues that the trial court should have granted a new trial due to Sackman's absence. The trial judge rejected the argument for several reasons, two of which more than suffice to support the judge's exercise of discretion. First, the court was understandably concerned that no reason was ever given for Sackman's absence. A voluntary refusal to honor a subpoena would be a very questionable basis for granting a new trial. On this record, all that the court knew was that Sackman had been subpoenaed and inexplicably, but apparently voluntarily, failed to appear for trial. Why would the court believe he would honor a second subpoena and attend a new trial?

More fundamentally, as the trial court realized when it was considering the material witness warrant, the proposed testimony was not admissible. In order to impeach a witness with a prior inconsistent statement, the witness must first be asked about the (alleged) prior statement. ER 613(b)[1]; *State v. Mays*, 65 Wn.2d 58, 62-63, 395 P.2d 758 (1964). If the witness agrees that the statement was made, there would be no need for the impeachment witness to testify.

---

[1] The rule states in part that testimony about a prior inconsistent statement "is not admissible unless the witness is afforded an opportunity to explain or deny" the statement. ER 613(b).

6

Here, the defense failed to ask the victim about the alleged conversation with Sackman.[2] Without that foundation, as the trial court duly noted, Sackman could not impeach the victim with the alleged prior statement. Because the foundation was not provided, Sackman could not have testified even if he had arrived at trial. There certainly was no basis for granting a new trial due to his failure to appear.

Either the unexplained absence or the lack of foundation was sufficient to deny the new trial. The court had tenable reasons for denying the motion. There was no abuse of discretion.

*Prosecutorial Misconduct*

Mr. Robbins next argues that the prosecutor erred in her closing argument by referencing evidence not produced at trial. While he correctly identifies the prosecutor's mistake, his failure to object to the easily remediable error fails to establish prejudice.

Well established standards govern review of this issue. The appellant bears the burden of demonstrating prosecutorial misconduct on appeal and must establish that the conduct was both improper and prejudicial. *State v. Stenson*, 132 Wn.2d 668, 718, 940 P.2d 1239 (1997). Prejudice occurs where there is a substantial likelihood that the misconduct affected the jury's verdict. *Id.* at 718-719. The allegedly improper

---

[2] Also absent from the record is any affidavit from Sackman detailing what he would testify about. Whether he would actually testify along the lines of the information he supplied to defense counsel is unknown.

statements should be viewed within the context of the prosecutor's entire argument, the issues in the case, the evidence discussed in the argument, and the jury instructions. *State v. Brown*, 132 Wn.2d 529, 561, 940 P.2d 546 (1997).

Reversal is not required where the alleged error could have been obviated by a curative instruction. *State v. Gentry*, 125 Wn.2d 570, 596, 888 P.2d 1105 (1995). The failure to object constitutes a waiver unless the remark was so flagrant and ill-intentioned that it evinced an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury. *Id.*; *State v. Swan*, 114 Wn.2d 613, 665, 790 P.2d 610 (1990); *State v. Belgarde*, 110 Wn.2d 504, 507, 755 P.2d 174 (1988).

Here, the prosecutor erred in attributing the two statements (arrival time and date he initially met victim) to the defendant. When asked about each statement, he denied making them. The prosecutor did not recall Deputy Lee to the stand to discuss the two statements per ER 613(b). Since the deputy did not discuss them in his own testimony, it was error for the prosecutor to argue the statements in her closing argument. They simply were not in evidence.

However, a timely objection would have cured the error. Mr. Robbins had testified less than an hour earlier and an objection would have allowed the jury to focus on his actual testimony and/or have permitted the judge to correct the prosecutor's misstatement. This was an easy problem to remedy.

Nor was the information particularly vital to the case. The critical question for the jury to determine was the defendant's intent in driving the car toward the hill. Moreover, the now challenged argument was supported by the victim's testimony, leaving the prosecutor free to argue the conflict between her testimony and the defendant's. The prosecutor's failed attempt to impeach the defendant by self-contradiction during cross-examination did not preclude her from arguing the disagreement in testimony merely because she wrongly attributed the evidence to the defendant. Her failure to establish the latter point was squarely before the jury.

Mr. Robbins has not established that the prosecutor's error was so prejudicial that an objection could not have remedied the problem. He has not established entitlement to relief.

*Sentence Length*

Mr. Robbins does correctly argue that the combined term of incarceration and community supervision exceeds the statutory maximum sentence. We remand for the trial court to correct the term of supervision.

Unlawful imprisonment is a class C offense carrying a statutory maximum sentence of five years in prison. RCW 9A.20.020(1)(c); RCW 9A.40.040(2). The combined term of imprisonment and community custody may not exceed the statutory maximum sentence. RCW 9.94A.701(9). In the event that the combined sentence would exceed the statutory maximum term, the trial court is required to reduce the term of

9

No. 36180-2-III
*State v. Robbins*

community custody. *Id.* Merely noting on the judgment and sentence that the combined term may not exceed 60 months is insufficient. *State v. Boyd*, 174 Wn.2d 470, 472, 275 P.3d 321 (2012).

Accordingly, the trial court must reduce the term of community custody to 4.5 months in order to comply with RCW 9.94A.701(9).

The convictions are affirmed. The case is remanded for the trial court to correct the term of community custody.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Pennell, J.