IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 77913-3-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | PUBLISHED OPINION |
| SEBASTIAN MICHAEL GREGG, | ) | |
| | ) | FILED: July 8, 2019 |
| Appellant. | ) | |

VERELLEN, J. — Sebastian Gregg appeals the constitutionality of his standard range sentence. He contends when sentencing a juvenile in adult court, the Eighth Amendment to the United States Constitution and article I, section 14 of the Washington Constitution require a presumption that a juvenile's youthfulness is a mitigating factor and the State assumes the burden to overcome the presumption. Neither the federal nor the Washington case law cited by Gregg supports his argument or warrants deviating from the Sentencing Reform Act of 1981 (SRA),[1] which places the burden of proving mitigating factors on the defendant.

Gregg also challenges the voluntariness of his guilty plea. Although Gregg was affirmatively misinformed about his duty to register as a felony firearm offender, Gregg fails to establish manifest injustice.

---

[1] Ch. 9.94A RCW.

Therefore, we affirm.

## FACTS

The facts of the underlying crimes are not at issue or in dispute.

The State charged Gregg, along with his codefendant, Dylan Mullins, with first degree murder with a firearm, first degree burglary with a firearm, and first degree arson.[2] Although Gregg was 17 years old at the time of the murder, he was "subject to the exclusive original jurisdiction of the adult court" because he was charged with first degree murder.[3]

Gregg pleaded guilty as charged. At sentencing, Gregg requested an exceptional sentence downward based on his youthfulness. Following a six-day sentencing hearing, the court imposed a standard range of sentence of 444 months.

Gregg appeals.

## ANALYSIS

### I. Challenge to the Standard Range Sentence

Gregg challenges the trial court's imposition of a standard range sentence.

The SRA provides that a standard range sentence "shall not be appealed."[4] But a party may still "'challenge the underlying legal conclusions and determinations by which a court comes to apply a particular sentencing

---

[2] Clerk's Papers (CP) at 14-15.
[3] CP at 3.
[4] RCW 9.94A.585(1).

provision.'"[5] The SRA provides, "The court may impose a sentence outside the standard range for an offense if it finds . . . that there are substantial and compelling reasons justifying an exceptional sentence."[6] Under the SRA, the defendant has the burden to prove mitigating circumstances by a preponderance of the evidence.[7]

Gregg contends the Eighth Amendment to the United States Constitution and article I, section 14 of the Washington Constitution require a presumption that a juvenile's youth is a mitigating factor and that the State assume the burden to prove otherwise beyond a reasonable doubt. Constitutional interpretation is a question of law we review de novo.[8]

Gregg raises these arguments for the first time on appeal. Although "[t]he appellate court may refuse to review any claim of error which was not raised in the trial court," a party may raise a "manifest error affecting a constitutional right" for the first time on appeal.[9] Gregg's claimed error implicates his constitutional rights. And given the State's lack of briefing on whether the error is manifest, the State appears to acknowledge this issue is reviewable for the first time on appeal.

---

[5] State v. Ramos, 187 Wn.2d 420, 433, 387 P.3d 650 (2017) (quoting State v. Williams, 149 Wn.2d 143, 147, 65 P.3d 1214 (2003)).

[6] RCW 9.94A.535.

[7] RCW 9.94A.535(1).

[8] Ramos, 187 Wn.2d at 433.

[9] RAP 2.5(a)(3).

## a. *Eighth Amendment to the United States Constitution*

The Eighth Amendment prohibits "cruel and unusual punishment."[10] In the context of this prohibition, the United States Supreme Court and the Washington Supreme Court have repeatedly recognized that children are different from adults and these differences require different sentencing procedures, including full discretion for the court to consider youthfulness at sentencing and a categorical bar of certain levels of punishment for juveniles.

In 2005, in Roper v. Simmons, the United States Supreme Court acknowledged "[t]hree general differences between juveniles under 18 and adults [that] demonstrate that juvenile offenders cannot with reliability be classified among the worst offenders."[11]

> First, . . . "[a] lack of maturity and an underdeveloped sense of responsibility are found in youth more often than in adults and are more understandable among the young. These qualities often result in impetuous and ill-considered actions and decisions." . . . .
>
> The second area of difference is that juveniles are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure. . . .
>
> The third broad difference is that the character of a juvenile is not as well formed as that of an adult. . . . The personality traits of juveniles are more transitory, less fixed.[12]

---

[10] U.S. CONST. amend. VIII.

[11] 543 U.S. 551, 578, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005).

[12] Id. at 569-70 (alteration in original) (quoting Johnson v. Texas, 509 U.S. 350, 113 S. Ct. 2658, 125 L. Ed. 2d 290 (1993)).

In consideration of these differences, the Court determined "[t]he Eighth and Fourteenth Amendments forbid imposition of the death penalty on offenders who were under the age of 18 when their crimes were committed."[13] In 2010, in Graham v. Florida, the Court extended the categorical bar from Roper to life without parole sentences for juveniles convicted of nonhomicide offenses.[14]

In 2012, in Miller v. Alabama, the Court barred "mandatory" life without parole sentences for juveniles convicted of any offense.[15] The Court did not completely foreclose a trial court's ability to impose a life sentence without the possibility of parole for juvenile offenders convicted of homicide.[16] But it did announce the Eighth Amendment required courts "to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison."[17]

In 2017, in State v. Ramos, our Supreme Court addressed whether the requirements of Miller applied to literal and de facto life without parole sentences for juveniles convicted of homicide.[18] To support the court's determination that a Miller hearing was required in both circumstances, the court analyzed the Miller factors:

---

[13] Id. at 578.
[14] 560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010).
[15] 567 U.S. 460, 479, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012).
[16] Id. at 480.
[17] Id.
[18] 187 Wn.2d 420, 434, 387 P.3d 650 (2017).

At the <u>Miller</u> hearing, the court must meaningfully consider how juveniles are different from adults, how those differences apply to the facts of the case, and whether those facts present the uncommon situation where a life-without-parole sentence for a juvenile homicide offender is constitutionally permissible. <u>If the juvenile proves by a preponderance of the evidence</u> that his or her crimes reflect transient immaturity, substantial and compelling reasons would necessarily justify an exceptional sentence below the standard range because a standard range sentence would be unconstitutional.[19]

Our Supreme Court expressly determined "<u>Miller</u> does not require that the State assume the burden of proving that a standard range sentence should be imposed, rather than placing the burden on the juvenile offender to prove an exceptional sentence is justified."[20]

Additionally, although our Supreme Court acknowledged in <u>Ramos</u>, "most juvenile homicide offenders facing the possibility of life without parole will be able to meet their burden of proving an exceptional sentence below the standard range is justified,"[21] Gregg is not facing either a literal or a de facto life without parole sentence. The court sentenced Gregg to 444 months (37 years).

<u>Ramos</u> does not endorse the additional procedural protections Gregg advocates. In <u>Ramos</u>, the defendant argued the State must assume the burden of proving the court should impose a standard range sentence. Although the <u>Ramos</u> court avoided "discount[ing] the potential benefits of such procedural requirements," the court determined the defendant had "not shown that the

---

[19] <u>Id.</u> at 434-35 (emphasis added).

[20] <u>Id.</u> at 436-37.

[21] <u>Id.</u> at 443.

specific procedures . . . are required as a matter of federal constitutional law."[22] The court's comment concerning the "potential benefits" of additional procedural protections is dicta, and it cannot be read as endorsing Gregg's argument.

Gregg contends our Supreme Court "moved past Ramos"[23] in State v. Houston-Sconiers.[24] In Houston-Sconiers, our Supreme Court considered whether mandatory firearm enhancements for juvenile offenders violated Miller and the Eighth Amendment. The court held,

> In accordance with Miller, . . . sentencing courts must have complete discretion to consider mitigating circumstances associated with the youth of any juvenile defendant, even in the adult criminal justice system . . . . Trial courts must consider mitigating qualities of youth at sentencing and must have discretion to impose any sentence below the otherwise applicable SRA range and/or sentence enhancements.[25]

Houston-Sconiers addresses the effect of the SRA's firearm enhancement provision on the court's considerable discretion when sentencing a juvenile defendant in adult court. RCW 9.94A.533(3)(e) provides, "Notwithstanding any other provision of law, all firearm enhancements under this section are mandatory, shall be served in total confinement, and shall run consecutively to all other sentencing provisions, including other firearm or deadly weapon enhancements, for all offenses sentenced under this chapter." Our Supreme Court determined a sentencing court's discretion to consider the juvenile's youthfulness is not

---

[22] Id. at 437.

[23] Appellant's Br. at 24.

[24] 188 Wn.2d 1, 391 P.3d 409 (2017).

[25] Id. at 21.

constrained by the SRA's requirement that firearm enhancements are mandatory and run consecutively.

Houston-Sconiers neither mentions nor imposes the additional procedural protections Gregg requests. Although Houston-Sconiers does not cite Ramos or discuss the burden of proof, we reject Gregg's contention that this omission leaves the issue open. We are bound by our Supreme Court's holding in Ramos.[26]

In 2019, in State v. Gilbert, our Supreme Court further emphasized the discretion provided to the court to consider youthfulness when sentencing juveniles in adult court.[27] Gilbert "concern[ed] the scope of discretion a judge has in resentencing pursuant to RCW 10.95.035," the "Miller-fix" statute.[28] As to Houston-Sconiers, the Gilbert court stated,

> Our opinion in that case cannot be read as confined to the firearm enhancement statutes as it went so far as to question any statute that acts to limit consideration of the mitigating factors of youth during sentencing. Nor can it be read as confined to, or excluding, certain types of sentencing hearings as we held that the courts have discretion to impose downward sentences "regardless of how the juvenile got there."[29]

The United States and the Washington Supreme Court cases cited by Gregg do not support his proposition that the court is required to presume

---

[26] See Ramos, 187 Wn.2d at 436-37 ("Miller does not require that the State assume the burden of proving that a standard range sentence should be imposed, rather than placing the burden on the juvenile offender to prove an exceptional sentence is justified.").

[27] 193 Wn.2d 169, 438 P.3d 133 (2019).

[28] Id. at 171.

[29] Id. at 175-76 (quoting Houston-Sconiers, 188 Wn.2d at 9).

youthfulness and the State assumes the burden of overcoming this presumption. In fact, with the exception of Ramos, none of these cases mention the additional procedural protections requested by Gregg. And in Ramos, our Supreme Court explicitly determined Miller and the Eighth Amendment do not require the additional procedural protections at issue. Neither federal nor Washington Eighth Amendment case law warrant deviating from the basic structure of the SRA, which places the burden of proving the existence of substantial and compelling reasons to support an exceptional sentence on the defendant.

Gregg also cites to several out-of-state cases. Similar to Ramos and several of the cases discussed above, these out-of-state cases interpret Miller as requiring a presumption against life without parole sentences for juvenile offenders.[30] As mentioned above, Gregg is not subject to a life without parole sentence. And even if the out-of-state cases were analogous to these facts, we cannot ignore the binding precedent from our Supreme Court in Ramos.

Gregg has not shown that the Eighth Amendment requires a presumption that a juvenile's youth is a mitigating factor or that the State assumes the burden to prove otherwise beyond a reasonable doubt.

*b. Article I, Section 14 of the Washington Constitution*

Gregg also argues article I, section 14 of the Washington Constitution independently requires his requested procedural protections.

---

[30] State v. Riley, 315 Conn. 637, 110 A.3d 1205 (2015); State v. Hart, 404 S.W.3d 232 (Mo. 2013); Commonwealth v. Batts, 640 Pa. 401, 163 A.3d 410 (2017); Davis v. State, 415 P.3d 666 (Wyo. 2018).

Our Supreme Court has "'repeated[ly] recogni[zed] that the Washington State Constitution's cruel punishment clause often provides greater protection than the Eighth Amendment.'"[31] But "[e]ven where it is already established that the Washington Constitution may provide enhanced protections on a general topic, parties are still required to explain why enhanced protections are appropriate in specific applications."[32]

In Ramos, although the defendant was seeking similar procedural protections, our Supreme Court declined to decide "whether article I, section 14 of the Washington Constitution requires greater procedural protections than the Eighth Amendment when a juvenile homicide offender faces life without parole" because the defendant did not provide any explanation for why enhanced protections were appropriate under the circumstances.[33]

Gregg relies on State v. Bassett from Division Two of this court to argue enhanced protections are appropriate in these circumstances.[34] In Bassett, Division Two criticized the Miller analysis as "speculative" and "uncertain [in] nature."[35] Expanding on this criticism, Gregg contends the Miller factors create a risk that "the juvenile will not receive the possibility of mitigation and will be subject

---

[31] State v. Bassett, 192 Wn.2d at 78 (alterations in original) (quoting State v. Roberts, 142 Wn.2d 471, 506, 14 P.3d 713 (2000)).

[32] Ramos, 182 Wn.2d at 454 (quoting State v. Pugh, 167 Wn.2d 825, 835, 225 P.3d 892 (2009)).

[33] Id.

[34] 198 Wn. App. 714, 394 P.3d 430 (2017).

[35] Id. at 743.

to the same mandatory ranges and enhancements applied to adults."[36] Gregg

argues the presumption and burden shift would mitigate the risk identified in

Bassett. But at most, Bassett's critique of Miller could support more precise

youthfulness factors. Nothing in Bassett suggests the State should have the

burden of overcoming a presumption of youthfulness. And Gregg fails to provide

any compelling argument to support such an assertion.

Here, the trial court fully considered all of the youthfulness arguments

presented by Gregg.

> Mr. Gregg is arguing his youthfulness is a mitigating factor justifying
> an exceptional sentence below the standard range. . . .
>
> In deciding this issue, I have considered a number of factors,
> including but not limited to, whether Mr. Gregg's youth, age 17,
> reduced his sense of responsibility. Did he understand the
> significance of his actions? Whether he was impetuous, unusually
> impulsive, had an increased susceptibility to others, including peer
> pressures, specifically that of Mr. Mullins. His truthfulness, or lack
> thereof, his level of maturity, and whether he had a genuine sense of
> remorse before, during, and after the murder.[37]

Nothing in the record suggests the court misunderstood the full discretion it

had to consider Gregg's youthfulness. And the court did not lean on the burden of

proof when it determined there were no "substantial and compelling reasons to

justify a sentence below the standard range."[38]

> And having looked at all of the evidence and listening carefully,
> taking more notes than I probably should have taken, but tons of

---

[36] Appellant's Br. at 28.

[37] Report of Proceedings (RP) (Dec. 14, 2017) at 675-77.

[38] Id. at 688.

notes, I find that this is not about youthful disobedience as it relates to Mr. Gregg. This is not youthful impulsivity. Mr. Gregg knew the consequences of his actions.[39]

Gregg has not shown that article I, section 14 requires a presumption that a juvenile's youth is a mitigating factor or that the State assumes the burden to prove otherwise beyond a reasonable doubt.

## II. Plea Agreement

Gregg contends his plea is involuntary because he was affirmatively misinformed that he would not be required to register as a felony firearm offender.

Gregg raises this issue for the first time on appeal.[40] Because "[d]ue process requires that a guilty plea be knowing, intelligent, and voluntary,"[41] Gregg's claimed error implicates a constitutional right. But to obtain review, Gregg must still establish the error is manifest.[42] To establish an error is manifest, the

---

[39] Id.

[40] See RAP 2.5(a)(3) ("The appellate court may refuse to review any claim of error which was not raised in the trial court," but a party may raise a "manifest error affecting a constitutional right" for the first time on appeal.).

[41] In re Pers. Restraint of Stoudmire, 145 Wn.2d 258, 266, 36 P.3d 1005 (2001) (citing U.S. CONST. amend. 14; Boykin v. Alabama, 395 U.S. 238, 243-44, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969)).

[42] We are not compelled to analyze this issue under ineffective assistance of counsel, as suggested by the State. First, Gregg does not allege ineffective assistance of counsel. And second, Gregg was arguably misled by the court and the prosecutor, not defense counsel. We rely on the "manifest injustice" analysis rather than the prejudice prong from ineffective assistance of counsel.

defendant must show "'the asserted error had practical and identifiable consequences in the trial of the case.'"[43]

In addition to the constitutional requirements, CrR 4.2(f) governs criminal pleas: "The court shall allow a defendant to withdraw the defendant's plea of guilty whenever it appears that the withdrawal is necessary to correct a manifest injustice."[44] Prior to the acceptance of a guilty plea, a defendant "'must be informed of all the direct consequences of his plea.'"[45] "A direct consequence of pleading guilty is one having a definite, immediate, and largely automatic effect on the sentence."[46] On the other hand, "[c]onsequences that are not 'automatically imposed' by the sentencing court, that do not 'automatically enhance' the sentence, or that do 'not alter the standard of punishment' are collateral."[47] A manifest injustice occurs if the defendant materially relied on affirmative

---

[43] State v. Kirkman, 159 Wn.2d 918, 935, 155 P.3d 125 (2007) (internal quotation marks omitted) (quoting State v. WWJ Corp., 138 Wn.2d 595, 603, 980 P.2d 1257 (1999)).

[44] (Emphasis added.) Although most cases addressing affirmative misinformation involve defense counsel, the duty to inform the defendant is not limited to defense counsel. We reject the State's suggestion that an appellant must raise this issue under ineffective assistance of counsel. Gregg does not allege ineffective assistance of counsel. And Gregg was arguably misled by the court and the prosecutor, not defense counsel. We rely on the "manifest injustice" analysis rather than the prejudice prong from ineffective assistance of counsel.

[45] A.N.J., 168 Wn.2d at 113-14 (quoting State v. Barton, 93 Wn.2d 301, 305, 609 P.2d 1353 (1980)).

[46] In re Pers. Restraint of Reise, 146 Wn. App. 772, 787, 192 P.3d 949 (2008).

[47] Id. (quoting State v. Ward, 123 Wn.2d 488, 513-14, 869 P.2d 1062 (1994)).

misinformation concerning a collateral consequence when deciding to plead guilty.[48]

Here, the plea agreement included the following provision:

> This offense is a felony firearm offense . . . and the judge may impose a requirement that I register with the sheriff in the [c]ounty where I reside . . . . If this offense, or an offense committed in conjunction with this offense . . . was committed against a child under 18, or was a serious violent offense, the judge must impose this registration requirement.[49]

This provision was crossed out and signed by Gregg. At the plea hearing, the State asked Gregg, "There are a number of paragraphs throughout this document that have been crossed out and you have initialed. Do you understand that that means that these paragraphs, they do not apply to you?"[50] Gregg answered in the affirmative. At sentencing, the court imposed a requirement that Gregg register as a felony firearm offender.[51]

On this record, it is clear that Gregg was affirmatively misinformed about his duty to register as a felony firearm offender. To determine whether registration is a direct or collateral consequence, we turn to cases addressing the analogous sex offender registration.

In State v. Ward, one of the defendants challenged the sex offender registration statute, arguing he was not informed of the requirement in his plea

---

[48] Id.

[49] CP at 22.

[50] RP (Aug. 18, 2017) at 15.

[51] CP at 137.

agreement.[52] The defendant was released from confinement before the registration statute went into effect. Our Supreme Court considered whether there was a constitutional duty to advise a defendant of the requirement to register as a sexual offender at the time of his guilty plea.[53] The court concluded there was no duty because "[a]lthough the duty to register flows from [the defendant's] conviction for a felony sex offense, it does not enhance [the defendant's] sentence or punishment."[54] "Because registration as a sex offender does not alter the standard of punishment, we hold the duty to register is a collateral, and not a direct, consequence of a guilty plea."[55] Consistent with Ward, registration as a felony firearm offender does not alter the standard of punishment. The duty to register is a collateral, and not a direct, consequence of a guilty plea.

Gregg relies on A.N.J. to argue the question whether registration requirements are direct or collateral consequences is unresolved.[56] In A.N.J., the defendant sought to withdraw his guilty plea "because, he contends, his counsel misled him about the consequences of his plea."[57] Our Supreme Court determined although the defendant was informed that he had an obligation to

---

[52] 123 Wn.2d 488, 494, 869 P.2d 1062 (1994).

[53] Id. at 513.

[54] Id.

[55] Id. at 513-14.

[56] Appellant's Br. at 37 (citing A.N.J., 168 Wn.2d at 114).

[57] A.N.J., 168 Wn.2d at 114.

register as a sex offender, he was misinformed that his conviction could be removed from his record.

In A.N.J., our Supreme Court acknowledged, "This court has never held that a preexisting automatic statutory requirement of sex offender registration is not a direct consequence of a plea, though we decided a related but different issue in State v. Ward."[58] The court distinguished Ward on the basis that "Ward considered a statutory consequence that came into existence only after the conviction, not an existing, automatic statutory consequence."[59]

But ultimately the court determined "since [the defendant in A.N.J.] was correctly informed that he had an obligation to register as a sex offender, it is unnecessary for us to decide whether a current statutory duty to register as a sex offender is a direct consequence of a plea for the purposes of establishing whether a plea was involuntarily made."[60] In these circumstances, Ward's thoughtful emphasis on whether the consequence enhances the sentence or punishment is compelling. Registration as a felony firearm offender does not alter the standard of punishment, even when automatically imposed. The felony firearm registration requirement is a collateral consequence of pleading guilty.

Gregg contends "regardless of whether the registration requirement is characterized as a 'direct' or 'collateral consequence,' the result is the same

---

[58] Id.
[59] Id. at 115.
[60] Id.

because [Gregg] was positively misinformed."[61]  But affirmative misinformation about a collateral consequence does not automatically render a guilty plea involuntary.  Affirmative misinformation about a collateral consequence may create a manifest injustice "if the defendant materially relied on that misinformation when deciding to plead guilty."[62]

Gregg does not claim that the misinformation concerning the firearm registration requirement materially influenced his decision to plead guilty.  And the record on appeal does not include any facts regarding how he arrived at his decision to plead guilty.  We conclude, on this record, this misinformation did not render Gregg's plea involuntary and does not constitute manifest constitutional error.

Therefore, we affirm.

WE CONCUR:

---

[61] Appellant's Br. at 37.
[62] Reise, 146 Wn. App. at 787.