IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 36019-9-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOSE ENRIQUE GONZALEZ PALOMARES, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Jose Gonzalez Palomares[1] appeals from his conviction for first

degree child rape, challenging the timeliness of his trial, the propriety of a mistrial, and

the use at trial of text messages his wife shared with police, among other contentions.

We affirm.

FACTS

At age 14, NRE reported that she had been the victim of a rape five or six years

earlier. She accused Mr. Gonzales, who was now 22, of raping her in a closet while his

mother was babysitting NRE. After interviewing NRE, law enforcement also talked with

Mr. Gonzales. Mr. Gonzales voluntarily spoke with law enforcement one afternoon, then

---

[1] Appellant's counsel refers to his client by the last name of Gonzalez, as did the
parties at trial, so we also will use that appellation.

went to work to pick up his paycheck. He failed to return to work for his dinnertime shift.

Mr. Gonzales texted his wife that the past was catching up to him, urged her to take care of their unborn child, he was sorry, and he needed to leave.[2] His wife, CG, reported to police that Gonzales was missing and shared the text messages with them. The investigating officer took photos of the text messages. Law enforcement started looking for Mr. Gonzales as a missing person. The prosecutor also filed charges and obtained an arrest warrant.

Mr. Gonzales was soon apprehended and apparently[3] was arraigned on September 25, 2017. Trial apparently was scheduled for November 7, 2017, with the court and parties recognizing November 27 as the final day of the 60-day speedy trial period.[4] Trial was continued to November 28 on the State's motion; the continuance order recognized December 28 as the final day of the new speedy trial period. Clerk's Papers (CP) at 31. For reasons not related by our record, trial was then rescheduled before Judge Culp on December 7.

---

[2] Defendant and his wife had been married approximately four months at the time of his disappearance.

[3] Information concerning the arraignment and initial trial setting is not included in our clerk's papers, so this information is drawn from trial court briefing of the parties.

[4] The record does indicate that Mr. Gonzalez remained in custody. Presumably, the November 27 date reflected the impact of the Thanksgiving holiday weekend. November 24 would have been the sixtieth day from arraignment.

At the December 6, 2017, pretrial hearing, Judge Culp continued the trial on the court's own motion. Hospice officials had advised that the judge's brother's death was imminent and Judge Culp needed to leave town to pay his final visit. Report of Proceedings (RP) at 37. Judge Rawson, the other Okanogan County Superior Court judge, was not "on campus" the following day and could not step into the trial. Judge Culp also preferred to keep the trial due to significant pretrial rulings that he had made; the court was concerned that the parties might be subject to inconsistent rulings if another judge heard the case. The defense objected to a continuance on the basis that Mr. Gonzales was in custody and that defense counsel had two jury trials already set for January 2018. RP at 40-42. In response to the court's suggestion that Mr. Gonzales be released, defense counsel noted that an immigration hold would require that his client be transferred to federal custody and possibly deported before the Okanogan case could be resolved. Immigration counsel had advised that it was not in Mr. Gonzales's best interest to be released from state court custody. RP at 43-44. The court continued the trial in the interests of justice to January 9, 2018, an available date on defense counsel's schedule. CP at 88. The defense filed a written objection to the new trial date, but did not note the matter for hearing. CP at 93-95.

Judge Culp granted a defense motion to exclude text messages found in Mr. Gonzales's cell phone pursuant to a search warrant, accepting the defense argument that the spousal communication privilege precluded use of the information. With respect to

the messages CG had shown to the officer, the defense asked the court to exclude the information under ER 403. CP at 357. The defense agreed with the State's position that CG's voluntary disclosure of the messages "moots the privilege. This is correct." CP at 355.

The case proceeded to jury trial before Judge Rawson on January 29, 2018. Testimony was heard over portions of the following two days and the case was argued to the jury on the morning of February 1. Deliberations began at 10:59 a.m. that morning. The jury sent a note out in the afternoon asking what to do if the jury could not reach a unanimous decision. Discussing the situation with counsel, Judge Rawson noted that the jury had deliberated for five hours and it was his intention to bring the jury into the courtroom and question the presiding juror about whether there was a reasonable probability of reaching a verdict. Both counsel stated that they had no objection to the proposed action. RP at 131. The presiding juror advised the court that there was "no" reasonable probability of reaching a verdict. RP at 132. The court directed the jury to return to the jury room, sign a blank verdict form, and then return to the courtroom. The judge then declared a mistrial after the presiding juror once again confirmed in open court that there was no reasonable probability of reaching a verdict.

The second jury trial began before Judge Rawson on March 6, 2018. At that trial, two exhibits displayed the text messages CG showed the officer. Exs. 7, 8. NRE

described her memories of the incident and Mr. Gonzales testified that he did not commit the crime. Nonetheless, the jury convicted him of first degree child rape.

Prior to sentencing, the defense moved for a new trial on the basis of newly discovered evidence. Mr. Gonzales's young cousin, YABC, who had been babysat along with NRE, told defense counsel that the victim had told her that she had been sexually abused by a member of her own household. After hearing argument, the trial court concluded that the cousin's testimony probably would not have changed the verdict in light of the defendant's own behavior and statements. CP at 314, 326.

At sentencing, the defense sought an exceptional mitigated sentence of 10 months commensurate with the sentence a juvenile court would have imposed on Mr. Gonzales's youth at the time of the offense. The trial court declined the request and, instead, imposed the bottom range sentence of 93 months.

Mr. Gonzales appealed to this court. A panel considered his appeal without conducting argument.

ANALYSIS

This appeal raises six claims. In order, we consider his contentions that (1) his CrR 3.3 right to a timely trial was violated, (2) the court erroneously granted a mistrial, (3) the text messages his wife shared with law enforcement should not have been admitted, (4) the evidence was insufficient, (5) his new trial motion was erroneously

denied, and (6) the court erred in denying his request for an exceptional sentence. We affirm.

*CrR 3.3*

Initially, Mr. Gonzales argues that Judge Culp erred in continuing the December 7 trial setting, likening the situation to court congestion. Labeling a continuance as "court congestion" does not make it so. The court did not abuse its discretion in continuing the case to allow the judge to attend to his dying brother.[5]

Our time for trial rule, CrR 3.3, requires trial within 60 days of arraignment if the defendant is held in custody on the pending charge(s) or 90 days if the defendant is not in custody. CrR 3.3(b), (c)(1). The same time periods apply if a new commencement date is required for any of several reasons listed in CrR 3.3(c)(2).[6]

A timely written objection to a trial date scheduled outside the requirements of the rule must be brought to the court's attention by motion and noted for hearing—or the defendant loses the opportunity to object. CrR 3.3(d). Various factors also act to exclude time from the 60- or 90-day trial period, including unavoidable or unforeseen

---

[5] The failure of the defense to note its objection and motion for hearing appears to have waived this argument. CrR 3.3(d)(3). However, the prosecutor does not argue this point and we need not address it.

[6] In essence, the rule reflects the old maxim, "Need brooks no delay, yet late is better than never." J.R.R. TOLKIEN, THE RETURN OF THE KING 134 (Ballantine Books 1972) (1955).

6

circumstances. CrR 3.3(e)(8). Finally, even if the time for trial period passes without trial, a five day cure period may be invoked. CrR 3.3(g).

A court may grant a continuance on its own motion or that of a party when the continuance is required in the administration of justice and the defendant will not be prejudiced in the presentation of his defense. CrR 3.3(f)(2). When a trial is continued in accordance with CrR 3.3(f)(2), the effect of the continuance is to exclude the period of the continuance from the time for trial period. CrR 3.3(e)(3).[7] The decision to grant or deny a continuance is reviewed for abuse of discretion. *State v. Ollivier*, 178 Wn.2d 813, 822-823, 312 P.3d 1 (2013). Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

When trial is not heard on a scheduled date because of inadequate court resources to conduct the trial or inefficient administrative procedures, the problem is considered to be court congestion. *E.g.*, *State v. Mack*, 89 Wn.2d 788, 791-792, 576 P.2d 44 (1978). Court congestion is not considered "good cause" to continue a trial. *Id*. at 792. *Accord State v. Kenyon*, 167 Wn.2d 130, 139, 216 P.3d 1024 (2009). "Self-created hardship is not an excuse for violating mandatory rules." *Mack*, 89 Wn.2d at 794.

---

[7] When there is an excluded period, the time for trial does not expire until 30 days after the end of the excluded period. CrR 3.3(b)(5). This is colloquially known as a "buffer" period.

Mr. Gonzales likens his situation to the problem of court congestion, noting that the second Okanogan judge was not present and unable to take over the case on December 7. He misreads the situation. His trial would have been held on December 7 except for the personal situation of the assigned trial judge. Judge Culp needed to leave work to attend to his dying brother. That is a legitimate reason to continue a trial. Judge Culp was not delayed in another trial nor unavailable due to some kind of administrative failure. This was not court congestion.

The trial court made the two findings required by CrR 3.3(f)(2): the continuance was necessary in the administration of justice and the defendant was not "prejudiced in the presentation of his or her defense." Judge Culp, the judge assigned to the trial, unexpectedly needed to leave to attend to personal matters. This made the continuance necessary in the administration of justice. The court also heard from the defense, which explained why the continuance was undesirable—Mr. Gonzales was in custody and his attorney was already scheduled for multiple trials the following month. Neither of these rationales established prejudice "in the presentation of his or her defense." *Id.* The trial court raised the possibility of releasing Mr. Gonzales from custody, but the offer was declined due to the immigration hold. The other objection was merely that trial counsel would be extra busy the following month. Presumably the defense was ready to go for trial on December 7, so no additional preparation was necessary. Counsel did not identify any problems that would arise from continuing the case such as witnesses

8

becoming unavailable.  In short, the record did not establish that the continuance would prejudice the presentation of the defense.

Good cause was shown to continue the trial.  CrR 3.3(f)(2).  As a result, the time to the next trial date was excluded from the 60-day time for trial period.  CrR 3.3(e)(3).  Mr. Gonzales does not challenge any other continuance or extension of the January 9 trial date.  Accordingly, his time for trial right was not violated.[8]

*Mistrial Ruling*

Mr. Gonzales next argues that the trial court erred in declaring a mistrial, contending that the trial court failed to poll each juror before acting.  Mr. Gonzales agreed with the trial court's procedure and did not request additional polling.  He cannot establish manifest constitutional error.

We review a trial court's ruling on a motion to declare a mistrial for abuse of discretion.  *State v. Weber*, 99 Wn.2d 158, 166, 659 P.2d 1102 (1983).  "The question is not whether this court would have decided otherwise in the first instance, but whether the trial judge was justified in reaching his conclusion."  *State v. Taylor*, 60 Wn.2d 32, 42, 371 P.2d 617 (1962).

Reviewing courts have created several guidelines for reviewing mistrial rulings.  *State v. Melton*, 97 Wn. App. 327, 332, 983 P.2d 699 (1999).  These include: (1) whether

---

[8] We thus need not consider the court's alternative finding that the time also was properly excluded due to unavoidable or unforeseen circumstances.  CrR 3.3(e)(8).

the trial court acted hastily, or gave both parties an opportunity to explain their positions, (2) whether it carefully considered the defendant's interest in a single proceeding, and (3) whether it considered less drastic alternatives. *Id.* A trial court has broad discretion in deciding whether or not to allow a potentially deadlocked jury to continue or end its deliberations. *State v. Jones*, 97 Wn.2d 159, 163, 641 P.2d 708 (1982). That discretion should be exercised by considering "the length of time the jury had been deliberating in light of the length of the trial and the volume and complexity of the evidence." *Id*. at 164.

Mr. Gonzales argues that the trial court erred by declaring a mistrial after such a short period of time and by failing to poll all 12 jurors. He relies on *Jones* and *State ex rel Charles v. Bellingham Mun. Ct.*, 26 Wn. App. 144, 612 P.2d 427 (1980). Neither case helps his position.

In *Jones*, a prosecution for first degree[9] rape, the jury deliberated nearly 11½ hours before the *court* called the jury in to inquire about the expected length of continued deliberations and asked the foreman if there was a possibility of a verdict. 97 Wn.2d at 160-161. When told yes, the court sent the jury back for more deliberations, but brought them back at midnight, less than 90 minutes after the previous inquiry. *Id.* The court

---

[9] At the retrial, Jones was convicted of second degree rape. 97 Wn.2d at 160.

asked the jury if it would be able to reach a verdict by 1:30 a.m. *Id*. at 161. When all jurors agreed that was not possible, the court declared a mistrial. *Id*.

The Washington Supreme Court reversed the jury's verdict from the retrial, concluding that the trial court abused its discretion in declaring a mistrial once the jury indicated it could not reach a verdict by 1:30 a.m. *Id*. at 161-162. The court emphasized it was the trial judge, not the jury, who had raised the issue of possible deadlock. *Id*. at 165. Even at that, the jury's response did not even establish that it was hopelessly deadlocked, but only that it could not reach a verdict by 1:30 a.m. *Id*. at 166. On these facts, there was no basis for declaring the mistrial. *Id*.

The *Bellingham* case is even less on point. There the court became concerned because the jury in a negligent driving and hit and run case had exceeded the typical 45 minute deliberation by a half hour. 26 Wn. App. at 148. When the jury returned its not guilty verdict on the negligent driving charge, it also returned a blank verdict on the hit and run charge. *Id*. at 146. The court never asked the jury if it was deadlocked, but simply told the jury it could leave and never even declared a mistrial. *Id*. at 146-147. On these facts, there was no basis in the record for even declaring a mistrial. *Id*. at 148-149.

This case is far different than either of those. *Bellingham* stands for the principle that sending a jury home without inquiry into a verdict does not constitute a mistrial. *Jones* is more instructive, but also not closely on point. Unlike that case, the deadlock question in this action was raised by the jury, not the judge. Also unlike that case, the

court inquired about the potential for reaching a verdict and did not put an artificial time limit on its inquiry. Here, also unlike *Jones* or *Bellingham*, the parties *agreed* to the court's inquiry.

Neither case stands for the proposition that an unlimited period of time is available for deliberations. Here, the five hour period of deliberations (less, perhaps, any lunch break that is not reflected in our records) was less than that in *Jones*, but that fact is not itself dispositive. While the trial judge commented that the case would be difficult for the jury, that observation referenced the nature of the controversy—a five year old crime that boiled down to a credibility decision between the accused and the accuser. Those types of cases require jurors to make a difficult up or down credibility decision.

However, they are not complex cases. Here, the evidence was straightforward, with each side presenting its version of events along with such supporting evidence that could be developed under the circumstances. There was not a lot of evidence to weigh, but a simple decision to make—whom to believe. Five hours is not too brief a period of time for a credibility decision to be made.

Here, the idea of deadlock originated with the jurors. Although the trial court could have, and probably ought to have, inquired of all 12 jurors about the probability of a verdict, there was no request to poll the jury. When the trial judge expressed his plan of action, both sides stated that they had no objection to the process.

12

The court also did not end the trial as soon as the presiding juror advised that a verdict was not probable.  Instead, the jury was sent back to the jury room with directions to complete a blank verdict form.  While that was taking place, the parties had an opportunity to object to the mistrial or seek further deliberations, but did not do so.

The trial court did not abuse its discretion in granting the mistrial, particularly where the parties agreed with the approach the court was taking.  This was not a factually complex case and the jury had adequate time to reach its conclusion.  The court did not err by agreeing with the jury that it was deadlocked.

*Text Messages Shared with the Police*

Mr. Gonzales next argues that the text messages his wife shared with the police were protected by the spousal communications privilege and should have been suppressed.  However, he waived that argument in the trial court.

Mr. Gonzales successfully challenged the text messages recovered from his telephone by search warrant, arguing that the communications privilege prevented his wife from taking the stand to authenticate the messages.  In the course of making that argument, he agreed with the State that the privilege did not apply to the messages CG shared with the officer.  CP at 355 (the disclosure "moots the privilege").  Instead, he argued that the messages she shared should be excluded for evidentiary reasons, citing authentication and also ER 401, ER 402, and ER 403.  CP at 356-360.

None of those arguments are pursued in this appeal. This court reviews the trial court's evidentiary rulings for abuse of discretion. *State v. Guloy*, 104 Wn.2d 412, 429-430, 705 P.2d 1182 (1985). A proper objection must be made at trial to perceived errors in admitting or excluding evidence; the failure to do so precludes raising the issue on appeal. *Id*. at 421. "'[A] litigant cannot remain silent as to claimed error during trial and later, for the first time, urge objections thereto on appeal.'" *Id*. (quoting *Bellevue Sch. Dist. 405 v. Lee*, 70 Wn.2d 947, 950, 425 P.2d 902 (1967)). The party must have challenged the admission of evidence at trial on the same basis that it raises on appeal. *Guloy*, 104 Wn.2d at 422. As explained there:

> As to statement (d), counsel objected but on the basis that it was not proper impeachment nor was it within the scope of redirect. A party may only assign error in the appellate court on the specific ground of the evidentiary objection made at trial. Since the specific objection made at trial is not the basis the defendants are arguing before this court, they have lost their opportunity for review.

(Citation omitted.)

Here, Mr. Gonzales expressly told the trial court that the communications privilege did not apply to the messages CG shared with law enforcement and, instead, urged other grounds for excluding them. He does not pursue any of those arguments here, but only raises an argument he expressly told the trial court did not apply.

He does not get to change gears now. *Guloy*, 104 Wn.2d at 422. His claim of privilege was waived.

14

*Sufficiency of the Evidence*

Mr. Gonzales next argues that the evidence was insufficient to support the jury's verdict, arguing that the victim did not adequately explain that she had been penetrated. The evidence allowed the jury to find that element.

Evidence is sufficient to support a verdict if the jury has a factual basis for finding each element of the offense proved beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Green*, 94 Wn.2d 216, 221-222, 616 P.2d 628 (1980). The evidence is viewed in the light most favorable to the prosecution. *Green*, 94 Wn.2d at 221. Appellate courts defer to the trier-of-fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). Circumstantial evidence is as reliable as direct evidence. *Rogers Potato Serv., LLC v. Countrywide Potato, LLC*, 152 Wn.2d 387, 391, 97 P.3d 745 (2004); *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

"A person is guilty of rape of a child in the first degree when the person has sexual intercourse with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least twenty-four months older than the victim." RCW 9A.44.073. In turn, "sexual intercourse" means both "its ordinary meaning" and includes "any penetration of the vagina or anus however slight." RCW 9A.44.010(1)(a), (b).

As the statute provides, in order to prove sexual intercourse, there must be at least a slight penetration of the victim. *State v. Bishop*, 63 Wn. App. 15, 19-20, 816 P.2d 738 (1991). Our courts have noted the difficulty that a young child, who likely does not understand sexual conduct, can have describing the event. *Id.* at 27-28. When dealing with child victims, testimony recounting sexual conduct and the victim's feelings about it may evidence penetration based on reasonable inferences. *State v. Biles*, 73 Wn. App. 281, 284-285, 871 P.2d 159 (1994).

The challenge here is narrow, focusing solely on lack of penetration. Mr. Gonzales likens this case to the decision in *State v. A.M.*, 163 Wn. App. 414, 260 P.3d 229 (2011). There, the court found insufficient evidence of rape when testimony showed the defendant's penis *only* touched the victim's buttocks, not the anus. *Id.* at 417-418. Thus, the victim's testimony refuted the idea that penetration had occurred.

This case, however, has more. The victim testified that the defendant had put "his private parts inside of me." RP at 231. She clarified that her uncertainty was only about whether he had been inside her vagina or her bottom. RP at 231. The use of the word "inside" allowed the jury to find that penetration of the victim's vagina or anus had occurred.

The evidence was sufficient to establish the penetration definition of the crime's sexual intercourse element.

16

*New Trial Motion*

Mr. Gonzales next argues that the trial court erred in denying his motion for a new trial based on his cousin's "new evidence." We again conclude that the trial court did not abuse its discretion in this area.

We review a trial court's decision to grant or deny a motion for a new trial for abuse of discretion. *State v. Marks*, 71 Wn.2d 295, 302, 427 P.2d 1008 (1967). "The question is not whether this court would have decided otherwise in the first instance, but whether the trial judge was justified in reaching his conclusion." *State v. Taylor*, 60 Wn.2d at 42. In considering a motion for a new trial based on newly discovered evidence, our case law has a long-applied test. To grant a new trial for "newly discovered evidence" under CrR 7.5, a trial court must apply a five-factor test.

> A new trial will not be granted on that ground unless the moving party demonstrates that the evidence (1) will probably change the result of the trial; (2) was discovered since the trial; (3) could not have been discovered before trial by the exercise of due diligence; (4) is material; and (5) is not merely cumulative or impeaching.

*State v. Williams*, 96 Wn.2d 215, 222-223, 634 P.2d 868 (1981). "The absence of any one of the five factors is grounds for the denial of a new trial." *Id*. at 223.

The trial court rejected the motion on the basis of the first *Williams* factor, reasoning that the cousin's proposed evidence would not have changed the result of the trial due to NRE's testimony and the defendant's admissions expressed in the text messages. Because he believed the evidence significantly impeached NRE, Mr. Gonzales

17

argues that it would have changed the verdict. However, the trial court correctly recognized that the cousin's testimony would not have had significant effect.

The court noted that NRE had been impeached with her limited memory of the event. The cousin's proposed testimony did not even address Mr. Gonzales's alleged assault, but instead suggested that perhaps NRE had been attacked by someone else in a different location than the charged offense. The proposed testimony was also vague as to when the other assault may have occurred.

Although the evidence may have had some minor relevance, it was not significant to the actual issue in this case. NRE alleged that Mr. Gonzales had assaulted her five years earlier at the Gonzales Palomares household. The identity of the alleged attacker was not in issue—whether the event occurred or not was in issue. The cousin's proposed testimony did not weigh in on that issue. The court's conclusion that the minor impeachment value would not probably change the verdict is supported by the record.

The trial court had tenable grounds for rejecting the motion. There was no error.

*Exceptional Sentence*

Lastly, Mr. Gonzales contends that the trial court erred in rejecting his request for an exceptional sentence because it did not recognize its discretion. Rejecting a request is not the same thing as not understanding the power to act. Mr. Gonzales has not demonstrated error.

18

An exceptional sentence may be imposed if the trial court finds "substantial and compelling" reasons to go outside the standard range. RCW 9.94A.535. The trial court must enter written findings of fact and conclusions of law if it does impose an exceptional sentence. *Id*. A nonexclusive list of mitigating factors is recognized by statute. RCW 9.94A.535(1). However, an exceptional sentence above the standard range must be based on a recognized statutory factor. RCW 9.94A.535(2), (3).

The Washington Supreme Court has recognized that all juvenile offenders sentenced in adult court must be able to seek exceptional sentences based on their immaturity at the time of the commission of the crime. *State v. Houston-Sconiers*, 188 Wn.2d 1, 18-21, 391 P.3d 409 (2017). However, a youthful offender has no presumption or entitlement to a mitigated sentence. *State v. Gregg*, 9 Wn. App. 2d 569, 578-581, 444 P.3d 1219 (2019). The defendant still bears the burden of establishing that mitigating circumstances exist. *Id*. at 574.

Here the court imposed a standard range sentence. By statute and case law, Mr. Gonzales cannot challenge that sentence. RCW 9.94A.585(1); *State v. Grayson*, 154 Wn.2d 333, 338, 111 P.3d 1183 (2005). Instead, all he can challenge is the trial court's failure to follow a *mandatory* procedure at sentencing. *State v. Mail*, 121 Wn.2d 707, 712, 854 P.2d 1042 (1993). He attempts to do so by arguing that the trial court did not *acknowledge* its discretion to impose an exceptional sentence due to Mr. Gonzales's youth at the time of the offense. However, he presents no authority for the proposition

that courts are required to acknowledge their authority to act on the record when it is not a contested proposition. It is doubtful that Mr. Gonzales can raise this claim on appeal.

Nonetheless, the claim also fails on the merits because the trial judge understood his authority when he addressed and rejected the request for an exceptional sentence. An exceptional sentence may be available to a youthful offender whose offense bears the hallmarks of youth—lack of maturity, impetuous or ill-considered actions and decisions, susceptibility to peer pressure, and transitory (rather than fixed) character traits. *Gregg*, 9 Wn. App. 2d at 574-575 (citing *Roper v. Simmons*, 543 U.S. 551, 569, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005)).

The trial court expressly considered the potential mitigating factor of youth. The court noted that Mr. Gonzales was nearly an adult at the time of the offense. The defense submitted no evidence suggesting that the crime resulted from immaturity, but only argued his age at the time of the crime.[10] Indeed, the assault appeared to be planned; Mr. Gonzales took the child into a closet to avoid detection and made a crude effort at birth control and/or concealing evidence. There simply was no evidence suggesting that Mr. Gonzales's youth had anything to do with the crime.

---

[10] In light of his denial of the actions, it is unsurprising that Mr. Gonzalez presented no evidence about how or why the offense occurred.

The defense bore the burden of establishing a basis for an exceptional sentence. The trial court was not convinced by the defendant's arguments. There is no indication that the court erred when it imposed a low-end standard range sentence.

The conviction is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Pennell, J.

21